IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FULCRUM BIOENERGY, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-12008 (TMH)<br><br>(Joint Administration Requested) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
APPOINTING KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL
AS CLAIMS AND NOTICING AGENT,
EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors" and, together with their non-Debtor affiliates, "Fulcrum") respectfully state the following in support of this application (this "Application"):

**BACKGROUND**

1. On September 9, 2024 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code. The Debtors are authorized to continue managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested that their cases be consolidated for procedural purposes only and administered jointly. No trustee, examiner, or official committee has been appointed in these chapter 11 cases.

2. The Debtors were formed in 2007 to develop and implement a commercially viable

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with each debtor's federal tax identification numbers are: Fulcrum BioEnergy, Inc. (3733); Fulcrum Sierra BioFuels, LLC (1833); Fulcrum Sierra Finance Company, LLC (4287); Fulcrum Sierra Holdings, LLC (8498). The location of the Debtors' service address is: Fulcrum BioEnergy Inc., P.O. Box 220 Pleasanton, CA 94566. All Court filings can be accessed at: https://www.veritaglobal.net/Fulcrum.

"waste to fuel" process whereby trash is converted into usable fuel through the utilization of gasification and other technologies. The Debtors' Sierra BioFuels Plant (the "Sierra Plant") located approximately twenty miles east of Reno, Nevada, began successfully producing low carbon synthetic crude oil from landfill waste in December 2022.

3. Despite the Debtors' successful proof of concept at the Sierra Plant and substantial progress with ongoing research and development, the Debtors have faced significant liquidity issues in the last few years and were forced to cease operations at the Sierra Plant in May 2024. The Debtors have determined that a comprehensive financial restructuring, through chapter 11 bankruptcy is the only path forward to realize value on the Debtors assets for the benefit of its stakeholders.

4. Additional details regarding the Debtors and the circumstances that led to the filing of these chapter 11 cases and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Mark Smith, Restructuring Advisor to Fulcrum, BioEnergy, Inc. in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed simultaneously herewith and incorporated herein by reference.[2]

## JURISDICTION, VENUE, AND AUTHORITY

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated as of February 29, 2012.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day Declaration.

the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.  Venue is proper pursuant to 28 U.S.C. §§ 408 and 1409.

8.  The bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code and Rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

9.  The Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), appointing Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as the claims and noticing agent (the "Claims and Noticing Agent") in these chapter 11 cases, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these chapter 11 cases, effective *nunc pro tunc* to the Petition Date. In further support of this Application, the Debtors submit the *Declaration of Evan Gershbein in Support of Debtors' Application for Entry of an Order Appointing Kurtzman Carson Consultants, LLC dba Verita Global as Claims and Noticing Agent, Effective Nunc Pro Tunc to the Petition Date* (the "Gershbein Declaration"), attached hereto as **Exhibit B**

## VERITA'S APPOINTMENT

10. The Debtors' selection of Verita to act as the Claims and Noticing Agent has satisfied the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (the "Claims Agent Protocol"), in that the Debtors have obtained and reviewed

engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit that, based on all engagement proposals obtained and reviewed, Verita's rates are competitive and reasonable given Verita's quality of services and expertise. The terms of Verita's retention are set forth in the Engagement Agreement attached hereto as **Exhibit C** (the "Engagement Agreement"); provided, however, that the Debtors are seeking approval solely of the terms and provisions as set forth in this Application and the Proposed Order attached hereto.

11. Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be 700 entities to be noticed. Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file [a] motion on the first day of the case or within seven (7) days thereafter." In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

12. By separate application, the Debtors will seek authorization to retain and employ Verita as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11 cases will require Verita to perform duties outside the scope of 28 U.S.C. § 156(c).

## VERITA'S QUALIFICATION

13. Verita is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Verita's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other

administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Verita's has acted as official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Verita's active and former cases include: *In re Supply Source Enters., Inc., et al.*, Case No. 24-11054 (BLS) (Bankr. D. Del. Jun. 13, 2024); *In re ProSomnus, Inc., et al.*, Case No. 24-10972 (JTD) (Bankr. D. Del. May 9, 2024); *In re Sticky's Holding LLC, et al.*, Case No. 24-10856 (JKS) (Bankr. D. Del. Apr. 26, 2024); *In re SC Healthcare Holding, LLC, et al.*, Case No. 24-10443 (TMH) (Bankr. D. Del. Mar. 22, 2024); *In re Cano Health, Inc.*, No. 24-10164 (KBO) (Bankr. D. Del. Feb. 6, 2024) [D.I. 79]; *In re InVivo Therapeutics Corp.*, No. 24-10137 (MFW) (Bankr. D. Del. Feb. 6, 2024) [D.I. 29]; *In re AN Glob., LLC*, No. 23-11294 (JKS) (Bankr. D. Del. Aug. 29, 2023) [D.I. 58]; *In re Proterra Inc.*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 10, 2023) [D.I. 61]; *In re Novan, Inc.*, No. 23-10937 (LSS) (Bankr. D. Del. July 19, 2023) [D.I. 35]; *In re Lordstown Motors Corp.*, No. 23-10831 (MFW) (Bankr. D. Del. June 28, 2023) [D.I. 54]; *In re KDC Agribusiness LLC*, No. 23-10786 (CTG) (Bankr. D. Del. June 21, 2023) [D.I. 54]; *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. June 6, 2023) [D.I. 56]; *In re Plastiq Inc.*, No. 23-10671 (BLS) (Bankr. D. Del. May 25, 2023) [D.I. 35]; *In re Christmas Tree Shops, LLC*, No. 23-10576 (TMH) (Bankr. D. Del. May 9, 2023) [D.I. 76]; *In re Catalina Mktg. Corp.*, No. 23-10620 (KBO) (Bankr. D. Del. Mar. 31, 2023) [D.I. 42]; *CBCRC Liquidating Corp.*, No. 23-10245 (KBO) (Bankr. D. Del. Mar. 3, 2023) [D.I. 171]; *In re Starry Grp. Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023) [D.I. 61]; *In re Stanadyne LLC*, No. 23-10207 (TMH) (Bankr. D. Del. Feb. 22, 2023) [D.I. 54]; *In re Tricida*, No. 23-10024 (JTD) (Bankr. D. Del. Jan. 13, 2023) [D.I. 42]; *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) [D.I. 67]; and *In re First Guar. Mortg. Corp.*, No. 22-10584 (CTG) (Bankr. D. Del. Jul. 1, 2022) [D.I. 58].

14. By appointing Verita as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court (the "Clerk") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

## SERVICES TO BE PROVIDED

15. This Application pertains only to the work to be performed by Verita under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any work to be performed by Verita outside of this scope is not covered by this Application or by any order granting approval hereof. Specifically, Verita will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"):

   (a) Prepare and serve required notices and documents in the chapter 11 cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and Local Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

   (b) Maintain an official copy of, if applicable, the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

   (c) Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party in interest or the Clerk;

(d)      Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)      Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)      For *all* notices, motions, orders, or other pleadings or documents served, prepare and file (or cause to be filed) with the Clerk an affidavit or certificate of service within seven business days of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)      Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)      Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc*.); (vi) the applicable Debtor against whom the claim was asserted; and (vii) any disposition of the claim;

(i)      Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Verita, not less than weekly;

(l)      Upon completion of the docketing process for all claims received to date for each Chapter 11 Case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(m)      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations

      on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

  (n)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding the chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

  (o)    If the chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Verita of entry of the order converting the cases;

  (p)    30 days prior to the close of the chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Verita as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the chapter 11 cases;

  (q)    Within seven days of notice to Verita of entry of an order closing the chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

  (r)    At the close of the chapter 11 cases, within twenty-eight days of entry of a final decree, (i) forward to the Clerk an electronic version of all imaged claims; (ii) upload the creditor matrix mailing list to the Court's case management/electronic case filing platform (CM/ECF); and (iii) file a final Claims Register in the chapter 11 cases on the Court's Docket.

16.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Verita.

## **PROFESSIONAL COMPENSATION**

17.    The Debtors respectfully request that the undisputed fees and expenses incurred by Verita in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Verita agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the U.S. Trustee

for the District of Delaware (the "U.S. Trustee"), proposed counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

18. Prior to the Petition Date, the Debtors provided Verita a retainer in the amount of $50,000, which was received by Verita on December 31, 2023. Verita seeks to hold the retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement. Additionally, Verita received a prepayment of $30,000 on December 31, 2023. This payment is first being applied to all prepetition invoices and then to the first post-petition invoice. Verita has not received any payments from the Debtors in the 90 days prior to the Petition Date.

19. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Verita and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Veirta's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order. The Debtors believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

## INDEMNIFICATION

20. As part of the overall compensation payable to Verita under the terms of the Services Agreement, the Debtors have agreed, to the extent permitted by applicable law, to

indemnify, defend, and hold harmless Verita and its members, officers, employees, representatives, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Verita's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or the Proposed Order. The terms of the Services Agreement and indemnification provisions included therein were negotiated at arms' length between the Debtors and Verita, and the Debtors believe that such indemnification obligations are customary, reasonable, and consistent with recent orders entered in this jurisdiction and, therefore, should be approved. *See, e.g., In re Starry Grp. Holdings Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 20, 2023) [D.I. 61] (approving Verita retention application with indemnification provisions); *In re Stanadyne LLC*, No. 23-10207 (TMH) (Bankr. D. Del. Feb. 16, 2023) [D.I. 54] (same); *In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. Apr. 27, 2021) [D.I. 55] (same).

## **DISINTERESTEDNESS**

21. Although the Debtors do not propose to employ Verita under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Verita has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Gershbein Declaration, Verita has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

22. Moreover, in connection with its retention as Claims and Noticing Agent, Verita represents in the Gershbein Declaration, among other things, that:

    (a) Verita is not a creditor of the Debtors;

    (b)    Verita will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

    (c)    by accepting employment in these chapter 11 cases, Verita waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

    (d)    in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Verita will not be an agent of the United States and will not act on behalf of the United States;

    (e)    Verita will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

    (f)    Verita is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

    (g)    in its capacity as Claims and Noticing Agent in these chapter 11 cases, Verita will not intentionally misrepresent any fact to any person;

    (h)    Verita shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    (i)    Verita will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    (j)    none of the services provided by Verita as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

Verita will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## **BASIS FOR RELIEF**

### **Employment and Retention of Verita as Claims and Noticing Agent is Permitted**

23.    Although the Debtors have not yet filed the Schedules, they anticipate that there will be potentially numerous entities that will need to be noticed. In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that the appointment of a Claims and Noticing Agent is both necessary and in the best interests of the

Debtors' estates and creditors because the Debtors would be relieved of the burdens associated with the notice and claims processing services to be provided by Verita. Relieved of such burdens, the Debtors would be able to devote their full attention and resources to maximizing value for their stakeholders and facilitating the orderly administration of the chapter 11 cases.

24. Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below. Moreover, 28 U.S.C. § 156(c), which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the office of the Clerk for administration of bankruptcy cases. It, in relevant part, provides as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

25. In addition, Local Rule 2002-1(f) provides as follows:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than two hundred (200) creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. 156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Local Rule 2002-1(f). Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and 28 U.S.C. § 156(c) empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates pay the cost of such services.

26. In light of the foregoing, the Debtors believe that the retention of Verita as the Claims and Noticing Agent in the chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest. Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by Verita under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

27. By separate application, the Debtors will seek authorization to retain and employ Verita as administrative agent in the chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the chapter 11 cases will require Verita to perform duties outside the scope of 28 U.S.C. § 156(c).

### *Nunc Pro Tunc* Relief is Appropriate

28. Verita has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention *nunc pro tunc* to the Petition Date, so that Verita may be compensated for its pre-Application services. The Debtors believe that no party in interest would be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because Verita has provided and continues to provide valuable services to the Debtors' estates during the interim period. The Local Rules empower courts in this district to approve *nunc pro tunc* employment, and the Debtors submit that such approval is justified here. *See* Local Rule 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

Moreover, courts in this district routinely approve *nunc pro tunc* employment similar to that requested herein in comparable matters. *See, e.g., In re Arkansas Co.*, 798 F.2d 645, 650 (3d. Cir. 1986); *In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D. Del. 1989).

### **COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL**

29. This Application complies with the Claims Agent Protocol and substantially conforms to the standard. application pursuant to 28 U.S.C. § 156(c) in use in this Court. To the extent that there is any inconsistency between this Application, the Proposed Order, and the Engagement Agreement, the Proposed Order shall govern.

### **NOTICE**

30. Notice of this Motion is being provided to: (a) the Office of the United States Trustee (Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov)); (b) the Utility Providers identified on the Utility Providers List; (c) the Debtors' prepetition secured lender[s]; (d) the Internal Revenue Service; (e) [the bank]; (f) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors; (g) the United States Attorney's Office for the District of Delaware; (h) the Securities and Exchange Commission; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking first-day relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtors respectfully submit that no further notice of this Motion is required under the circumstances.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto, and grant such other relief as this Court deems appropriate under the circumstances.

Dated: September 10, 2024
Wilmington, Delaware

**Fulcrum BioEnergy Inc.**, on behalf of itself and each of its affiliated Debtors and Debtors in Possession

*/s/ Mark J. Smith*
Mark J. Smith
Chief Restructuring Officer