## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FULCRUM BIOENERGY, INC., et al., | Case No. 24-12008 (TMH) |
| Debtors.[1] | (Joint Administration Requested) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION BONDHOLDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the *Debtors' Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection To Certain Prepetition Bondholders; (III) Authorizing Use Of Cash Collateral; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), for entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) 364(c)(3), 364(d), 364(e), 503 and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001(b) and (c), 6004, and

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with each debtor's federal tax identification numbers are: Fulcrum BioEnergy, Inc. (3733); Fulcrum Sierra BioFuels, LLC (1833); Fulcrum Sierra Finance Company, LLC (4287); and Fulcrum Sierra Holdings, LLC (8498).  The Debtors' service address is:  Fulcrum BioEnergy Inc., P.O. Box 220 Pleasanton, CA 94566.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the applicable DIP Loan Documents (as defined below).

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules (the "**Local Rules**") for the United States Bankruptcy Court for the District of Delaware (this "**Court**"), requesting, among other things:

(1)     authorization for the Borrower (as defined in the DIP Note (as defined below)) to obtain postpetition financing pursuant to the DIP Facility (as defined below), and for each of the Guarantors (as defined in the DIP Note) to guarantee unconditionally on a joint and several basis, and subject to the terms and limitations set forth in the DIP Note in all respects, the Borrower's obligations under the DIP Facility, consisting of a senior secured super-priority term loan facility (the "**DIP Facility**"), on the terms and conditions substantially in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "**DIP Note**" and, together with any other related agreements, documents, security agreements, or pledge agreements, including this Interim Order and (when entered) the Final Order, collectively, the "**DIP Loan Documents**"), by and among the Borrower, the Guarantors, Switch, Ltd. ("**Switch**"), as lender (in such capacity together with its permitted successor and assigns, the "**DIP Lender**"), in an aggregate principal amount of up to $5.0 million in term loan commitments, which shall be available as term loans (the "**DIP Loans**") to the Borrowers upon entry of this Interim Order and satisfaction of the other conditions set forth therein in an interim amount not to exceed $3,204,103 (the "**Interim DIP Loan**") prior to entry of the Final Order, and the remainder of the DIP Facility available upon entry of the Final Order to the extent set forth therein.

(2)     authorization for the Debtors to execute, deliver, and enter into the DIP Loan Documents and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)      authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable to the DIP Lender pursuant to the DIP Loan Documents, including, without limitation, all loans, advances, debts, liabilities and obligations for the performance of covenants, tasks or duties or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable) owing by Borrower to the DIP Lender arising under the DIP Loan Documents, and all covenants and duties regarding such amounts, of any kind or nature, present or future, arising under the DIP Loan Documents, including all principal, interest, fees, charges, expenses, reasonable and documented attorneys' fees and any other sum chargeable to Borrower under the DIP Loan Documents (such obligations, the "**DIP Obligations**");

(4)      authorization for the Debtors, immediately upon entry of this Interim Order, to use proceeds of the DIP Facility solely for the purposes permitted under the DIP Loan Documents and solely in accordance with this Interim Order and the applicable Approved Budget (as defined below), subject to permitted variances and other exclusions set forth in the DIP Loan Documents;

(5)      the grant and approval of superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the Bankruptcy Code, to the DIP Lender, in respect of all DIP Obligations, subject and subordinate only to the Carve-Out (as defined below);

(6)      granting the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below) to secure the DIP Obligations, which DIP Liens shall be subject and subordinate to the Carve-Out;

(7)      authorization for the Debtors to use, solely in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) and the limitations provided herein and in the DIP Loan Documents, any Cash Collateral in which any of

the Prepetition Bonds Secured Parties (as defined below) may have an interest, and the granting of adequate protection solely to the extent of any diminution in the value of their respective interests in the Prepetition Bonds Collateral, including, without limitation, the Cash Collateral, as a result of (i) the incurrence of the DIP Obligations, (ii) the Debtors' use of Cash Collateral, (iii) the subordination of the Prepetition Bond Obligations to the DIP Obligations and the Carve-Out, (iv) any other diminution in value of the Prepetition Bonds Collateral arising from the Debtors' use, sale, or disposition of such Prepetition Bonds Collateral or the proceeds thereof, (v) the priming of the Prepetition Bond Liens by the DIP Liens, and (vi) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "**Diminution in Value**");

(8)     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Loan Documents to the extent hereinafter set forth;

(9)     subject to entry of the Final Order, a waiver of the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Bonds Collateral, and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(10)     this Court's waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order;

(11)     the scheduling of a final hearing on the Motion (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(12)     granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on September 12, 2024 (the "**Interim Hearing**"), and the Court having found that, under the circumstances, due and sufficient notice of the Motion and Interim Hearing was provided by the Debtors as set forth in Paragraph D of this Interim Order, and upon the record made by the Debtors at the Interim Hearing, including the Motion, the Declaration of Mark Smith in Support of First Day Relief  (the "**First Day Declaration**"), [Docket No. 9]; any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "**Estates**"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation and maintenance of the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

(A)    <u>Petition Date</u>. On September 9, 2024 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief (each, a "**Petition**") under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate and maintain their businesses and manage their properties as

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in any of the Chapter 11 Cases.

(B)    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over these Cases, the Debtors, property of the Debtors' Estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and 9014 and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

(C)    <u>Committee Formation</u>. As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "**Committee**") or any other statutory committee has been appointed in the Chapter 11 Cases.

(D)    <u>Notice</u>.  Good and sufficient notice of the Motion under the circumstances has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

(E)    <u>Parties' Acknowledgments, Agreements, and Stipulations</u>. In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender and the Prepetition Bonds Secured Parties to agree to provide, or consent to, the DIP Facility, access to the Cash Collateral, and subordination of the Prepetition Bond Liens (as defined below) to the DIP Obligations and Carve-Out, as provided herein, and as a condition to providing

financing under the DIP Facility and consenting to the use of Cash Collateral as set forth herein, subject to the rights of parties in interest (other than the Debtors) set forth in Section 4.1 of this Interim Order, the Debtors admit, stipulate, acknowledge, and agree, as follows:

(i)     <u>Prepetition Biofuels Bond Obligations</u>.  Certain of the Debtors are party to certain prepetition agreements relating to tax-exempt bonds issued by the Director of the State of Nevada Department of Business and Industry, as conduit bond issuer (in such capacity, the "**<u>Biofuels Bonds Conduit Issuer</u>**"), and such agreements and related documents include: (a) that certain Trust Indenture, dated as of October 1, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**<u>Biofuels Bond Indenture</u>**"), by and between the Biofuels Bonds Conduit Issuer and UMB Bank, N.A., as successor trustee (in such capacity, the "**<u>Biofuels Trustee</u>**"), as trustee for the bonds issued pursuant to the Biofuels Indenture (the "**<u>Biofuels Bonds</u>**" and the holders of such bonds, the "**<u>Biofuels Bondholders</u>**") which, *inter alia*, assigned all of the Biofuels Bonds Conduit Issuer's interests in any of the Biofuels Bond Documents (other than the Unassigned Director's Rights (as defined in the Biofuels Bond Indenture)) to the Biofuels Trustee, (b) that certain Second Amended and Restated Collateral Agency and Account Agreement, dated as of March 1, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**<u>Biofuels Bonds Collateral Agency Agreement</u>**"), by and among Debtor Fulcrum Sierra BioFuels, LLC ("**<u>Biofuels</u>**") and UMB Bank, N.A., as successor collateral agent and securities intermediary (in such capacity, the "**<u>Biofuels Collateral Agent</u>**", and together with the Biofuels Trustee and the Biofuels Bondholders, the "**<u>Prepetition Biofuels Bonds Secured Parties</u>**"), (c) that certain Financing Agreement, dated as of October 1, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**<u>Biofuels Bonds Financing</u>**

**Agreement**"), by and between the Biofuels Bonds Conduit Issuer and Biofuels, (d) that certain Security Agreement, dated as of October 1, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Biofuels Bonds Security Agreement**"), by and between Biofuels and the Biofuels Collateral Agent, (e) that certain Guaranty Agreement, dated as of October 1, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Biofuels Bonds Guaranty Agreement**"), by and between Debtor Fulcrum BioEnergy, Inc., as guarantor (in such capacity, the "**Biofuels Bonds Guarantor**", and together with Biofuels, the "**Biofuels Bonds Obligors**") and the Biofuels Trustee, (f) that certain Expense Reimbursement Agreement, dated as of May 23, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Expense Reimbursement Agreement**"), by and between the Debtors, the Prepetition Trustees, and the Prepetition Bonds Collateral Agents, (g) that certain Membership Interest Pledge Agreement, dated as of October 1, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Biofuels Bonds Pledge Agreement"), by and between Debtor Fulcrum Sierra Finance Company, LLC, as pledgor and the Biofuels Collateral Agent, and (h) that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing made by Biofuels, as grantor, to the Biofuels Trustee, for the benefit of the Biofuels Collateral Agent, as beneficiary, dated as of October 26, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Biofuels Bonds Mortgage**").[4]   Pursuant to the Biofuels Bond Indenture, the Biofuels Bonds

---

[4]   The Biofuels Bonds Indenture, Biofuels Bonds, Biofuels Bonds Collateral Agency Agreement, Biofuels Bonds Financing Agreement, Biofuels Bonds Security Agreement, Biofuels Bonds Guaranty Agreement, Prepetition Expense Reimbursement Agreement, Biofuels Bonds Pledge Agreement, and Biofuels Bonds Mortgage, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Biofuels Bonds Secured Parties, including, without limitation, all security agreements, deposit account control agreements, control agreements, notes, guarantees, mortgages, promissory notes, pledge agreements,

Conduit Issuer issued Biofuels Bonds with an aggregate principal amount of $175,000,000.00.  As of the Petition Date, approximately $168,067,871.14 of principal and unpaid interest under the Biofuels Bonds Indenture was outstanding, which amount is comprised of $152,605,094.57 in principal amount, and accrued and unpaid interest in the amount of $15,462,776.57 (and, together with any other amounts outstanding under the Biofuels Bond Documents, including interest, fees, and expenses, the "**Prepetition Biofuels Bond Obligations**").  The Prepetition Biofuels Bond Obligations are obligations of the Biofuels Bond Obligors pursuant to the Biofuels Bonds Documents.  The Prepetition Biofuels Bond Obligations are secured by first priority security interests in and liens (subject only to any liens permitted under the Biofuels Bond Documents) on the  "Collateral" or "Pledged Collateral" (as such terms are defined in the Biofuels Bond Documents) and the Mortgaged Property (as defined in the Biofuels Bonds Mortgage) (collectively, such Collateral, Pledged Collateral and Mortgage Property, collectively, the "**Prepetition Biofuels Bonds Collateral**" and such liens and security interests on such Prepetition Biofuels Bonds Collateral, the "**Prepetition Biofuels Bond Liens**").

(ii)    Prepetition Holdings Bond Obligations.  Certain of the Debtors are party to certain prepetition agreements relating to tax-exempt bonds issued by the Director of the State of Nevada Department of Business and Industry, as conduit bond issuer (in such capacity, the "**Holdings Bonds Conduit Issuer**"), and such agreements and related documents include: (a) that certain Trust Indenture, dated as of September 1, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Holdings Bonds Indenture**" and together with the Biofuels Bond Indenture, the "**Prepetition Indentures**"), by

---

Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, are referred to herein as the "**Biofuels Bond Documents**."

and between the Holdings Bonds Conduit Issuer and UMB Bank, N.A., as successor trustee (in such capacity, the "**Holdings Trustee**" and together with the Biofuels Trustee, the "**Prepetition Trustees**"), as trustee for the bonds issued pursuant to the Holdings Indenture (the "**Holdings Bonds**" and together with the Biofuels Bonds, the "**Prepetition Bonds**"; and the holders of the Holdings Bonds, the "**Holdings Bondholders**" and together with the Biofuels Bondholders, the "**Prepetition Bondholders**") which, *inter alia*, assigned all of the Holdings Bonds Conduit Issuer's interests in any of the Holdings Bond Documents (other than the Unassigned Director's Rights (as defined in the Holdings Bond Indenture)) to the Holdings Trustee; (b) that certain Second Amended and Restated Collateral Agency and Account Agreement, dated as of December 1, 2020 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Holdings Bonds Collateral Agency Agreement**" and together with the Biofuels Bonds Collateral Agency Agreement, the "**Collateral Agency Agreements**"), by and among Debtor Fulcrum Sierra Holdings, LLC ("**Holdings**") and UMB Bank, N.A., as successor collateral agent and securities intermediary (in such capacity, the "**Holdings Collateral Agent**", and together with the Biofuels Collateral Agent, the "**Prepetition Bonds Collateral Agents**"; the Holdings Collateral Agent together with the Holdings Trustee and the Holdings Bondholders, the "**Prepetition Holdings Bonds Secured Parties**"; and the Prepetition Biofuels Bonds Secured Parties and the Prepetition Holdings Bonds Secured Parties, collectively, the "**Prepetition Bonds Secured Parties**"), (c) that certain Financing Agreement, dated as of September 1, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Holdings Bonds Financing Agreement**", and together with the Biofuels Bonds Financing Agreement, the "**Prepetition Financing Agreements**"), by and between the Holdings Bonds Conduit Issuer and Holdings, (d) that certain Security Agreement, dated as of September 1, 2018

(as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Holdings Bonds FSH Security Agreement**"), by and between Holdings and the Holdings Collateral Agent, (e) that certain Security Agreement, dated as of September 1, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Holdings Bonds FSFC Security Agreement**", and together with the Holdings Bonds FSH Security Agreement, the "**Holdings Bonds Security Agreements**"), by and between Debtor Fulcrum Sierra Finance Company, LLC and the Holdings Collateral Agent, (f) that certain Guaranty Agreement, dated as of September 1, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Holdings Bonds Guaranty Agreement**", and together with the Biofuels Bonds Guaranty Agreement, the "**Prepetition Bonds Guaranty Agreements**"), by and between Debtor Fulcrum BioEnergy, Inc. (in such capacity, the "**Holdings Bonds Guarantor**", and together with Holdings, the "**Holdings Bonds Obligors**", and the Holdings Bonds Obligors collectively with the Biofuels Bonds Obligors, the "**Prepetition Obligors**") and the Holdings Trustee, and (g) the Expense Reimbursement Agreement.[5] Pursuant to the Holdings Bond Indenture, the Holdings Bonds Conduit Issuer issued Holdings Bonds with an aggregate principal amount of $114,000,000.00. As of the Petition Date, approximately $113,982,595.13 of principal and unpaid interest under the Holdings Bonds Indenture was outstanding, which amount is comprised of $104,067,583.40 in principal amount, and accrued and unpaid interest in the amount of $9,915,011.73 (and, together with any other amounts outstanding

---

[5] The Holdings Bonds Indenture, Holdings Bonds, Holdings Bonds Collateral Agency Agreement, Holdings Bonds Financing Agreement, Holdings Bonds Security Agreements, Holdings Bonds Guaranty Agreement, and Prepetition Expense Reimbursement Agreement together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Holdings Bonds Secured Parties (as defined below), including, without limitation, all security agreements, deposit account control agreements, control agreements, notes, guarantees, mortgages, promissory notes, pledge agreements, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, are referred to herein as the "**Holdings Bond Documents**." The Biofuels Bond Documents together with the Holdings Bond Documents are referred to herein as the "**Prepetition Bond Documents**."

under the Holdings Bond Documents, including interest, fees, and expenses, the "**Prepetition Holdings Bond Obligations**", and together with the Prepetition Biofuels Bond Obligations, the "**Prepetition Bond Obligations**").  The Prepetition Holdings Bond Obligations are obligations of the Holdings Bond Obligors pursuant to the Holdings Bond Documents.  The Prepetition Holdings Bond Obligations are secured by first priority security interests in and liens (subject only to any liens permitted under the Biofuels Bond Documents) on the "Collateral" (as such terms are defined in the Holdings Bond Documents) (the "**Prepetition Holdings Bonds Collateral**" and together with the Prepetition Biofuels Bonds Collateral, the "**Prepetition Bonds Collateral**"; and such liens and security interests on such Prepetition Holdings Bonds Collateral, the "**Prepetition Holdings Bond Liens**", and together with the Prepetition Biofuels Bond Liens, the "**Prepetition Bond Liens**").

(iii)    _Prepetition Biofuels Bonds Collateral_. To secure the Prepetition Biofuels Bond Obligations, the Debtors entered into certain guaranty and collateral agreements and certain other security documents, including the Biofuels Bonds Mortgage, Biofuels Bonds Pledge Agreement, and the Biofuels Bonds Security Agreement, governing the Prepetition Biofuels Bonds Secured Parties' security interests in the Prepetition Biofuels Bonds Collateral (such agreements, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "**Prepetition Biofuels Bonds Collateral Documents**").  Pursuant to the Prepetition Biofuels Bonds Collateral Documents, and on the terms set forth therein, the Debtors granted to the Prepetition Bonds Secured Parties the Prepetition Biofuels Bond Liens on the Prepetition Biofuels Bonds Collateral.

(iv)    <u>Prepetition Holdings Bonds Collateral</u>. To secure the Prepetition Holdings Bond Obligations, the Debtors entered into certain guaranty and collateral agreements and certain other security documents, including the Holdings Bonds Security Agreements, governing the Prepetition Holdings Bonds Secured Parties' security interests in the Prepetition Holdings Bonds Collateral (such agreements, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "**Prepetition Holdings Bonds Collateral Documents**", and together with the Prepetition Biofuels Bonds Collateral Documents, the "**Prepetition Bonds Collateral Documents**"). Pursuant to the Prepetition Holdings Bonds Collateral Documents, and on the terms set forth therein, the Debtors granted to the Prepetition Holdings Bonds Secured Parties the Prepetition Holdings Bond Liens on the Prepetition Holdings Bonds Collateral.

(v)    <u>Validity of Prepetition Biofuels Bond Obligations</u>. The Prepetition Biofuels Bond Obligations owing to the Prepetition Biofuels Bonds Secured Parties constitute legal, valid, and binding obligations of the Debtors and the other Prepetition Biofuels Obligors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Biofuels Bond Obligations owing to the applicable Prepetition Biofuels Bonds Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined below).

(vi)     <u>Validity of Prepetition Holdings Bond Obligations</u>. The Prepetition Holdings Bond Obligations owing to the Prepetition Holdings Bonds Secured Parties constitute legal, valid, and binding obligations of the Debtors and the other Prepetition Holdings Obligors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Holdings Bond Obligations owing to the applicable Prepetition Holdings Bonds Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined below).

(vii)     <u>Validity of Prepetition Biofuels Bond Liens</u>. The Prepetition Biofuels Bond Liens granted to the Prepetition Biofuels Bonds Secured Parties constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and perfected security interests in and liens on the Prepetition Biofuels Bonds Collateral, were granted to, or for the benefit of, the Prepetition Biofuels Bonds Secured Parties for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(viii)     <u>Validity of Prepetition Holdings Bond Liens</u>. The Prepetition Holdings Bond Liens granted to the Prepetition Holdings Bonds Secured Parties constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and perfected security interests in and liens on the Prepetition Holdings Bonds Collateral, were granted to, or for the benefit of, the Prepetition Holdings Bonds Secured

Parties for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(ix)    <u>No Challenges/Claims</u>. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Bond Liens or Prepetition Bond Obligations exist, and no portion of the Prepetition Bond Liens or Prepetition Bond Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code) objections, challenges, causes of action, and/or choses in action against any of the Prepetition Bonds Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees with respect to the Prepetition Bond Documents, the Prepetition Bond Obligations, the Prepetition Bond Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Bond Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x)    <u>Indemnity</u>. The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by it in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens

and the Prepetition Bonds Secured Parties Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, the DIP Lender shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto in accordance with and as set forth in the DIP Loan Documents, *provided that* no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph E(vi), in the Prepetition Bond Documents, or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the Prepetition Bonds Secured Parties or the DIP Lender, as the case may be.

(xi)     Release. Each of the Debtors, their Estates and the Prepetition Obligors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns have agreed to provide releases to each of the Released Parties (as defined below) as provided in Section 5.17 of this Interim Order.

(xii)    Cash Collateral. The Debtors admit, stipulate, acknowledge, and agree that, in each case, except for any and all proceeds of the DIP Loans, all other cash of the Debtors, wherever located, and all cash equivalents, including cash in deposit accounts of the Debtors, as income, proceeds, products, rents or profits of other Prepetition Bonds Collateral, or otherwise, constitutes "cash collateral" of the Prepetition Bonds Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

(F)     <u>Findings Regarding the Postpetition Financing and Use of Cash Collateral</u>.

(i)     <u>Request for Postpetition Financing</u>. The Debtors have requested from the DIP Lender, and the DIP Lender is willing, subject to the terms of this Interim Order and satisfaction of the conditions set forth in the DIP Loan Documents, to extend the DIP Loans on the terms and conditions set forth in this Interim Order and the DIP Loan Documents, respectively.

(ii)     <u>Need for Postpetition Financing and Use of Cash Collateral</u>. The Debtors do not have sufficient liquidity, including Cash Collateral, without the financing requested in the Motion.  The Debtors' ability to fund their operations and other efforts and activities is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender and the use of Cash Collateral as set forth in this Interim Order, the DIP Note and the other DIP Loan Documents, as applicable, is vital to the preservation, maximization, and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim Order to, among other things, permit the orderly implementation and pursuit of a comprehensive marketing and sale process, and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

(iii)     <u>No Credit Available on More Favorable Terms</u>. The Debtors are unable to procure financing (x) in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code, (y) in exchange for the grant of a superpriority administrative expense under section 364(c)(1) of the Bankruptcy Code, or (z) in exchange for the grant of liens on property of the Estates pursuant to sections 364(c)(2) or

364(c)(3) of the Bankruptcy Code.  The Debtors assert in the Motion, the First Day Declaration, and in the DIP Declaration, and demonstrated at the Interim Hearing, that it would be futile under the circumstances for the Debtors to undertake further efforts to seek, and they would not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.  In light of the foregoing, and considering the futility of all other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and are in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)     Budget. The Debtors have prepared and delivered to the DIP Lender an initial budget (the "**Initial Budget**"), a copy of which is attached hereto as **Exhibit B**. The Initial Budget reflects the Debtors' projected receipts, disbursements, net cash flow, liquidity and loans for each calendar week during the period from the Petition Date through and including the end of the ninth (9th) calendar week following the Petition Date (the Initial Budget and each subsequent budget approved by the DIP Lender in its sole discretion and then in effect, the "**Approved Budget**"), in each case, subject to (i) with respect to any (A) for the first three Variance Testing Dates (which shall be each Friday of each week after the date hereof) commencing with the first full week after the date hereof, the period commencing on the Petition Date and ending on such Variance Testing Date and (B) thereafter, the four-week period ending on such Variance Testing Date (the "**Variance Testing Period**"), (X) in respect of the aggregate amount of Actual Disbursement Amounts (as defined in the DIP Note), 15% for such Variance Testing Period and (Y) in respect of Actual Cash Receipts (as defined in the DIP Note) 15% for such Variance Testing Period ("**Permitted Variances**"); and (ii) other exclusions set forth in the DIP Loan Documents.

The Debtors believe that the Initial Budget is reasonable under the facts and circumstances. The DIP Lender is relying upon the Debtors' agreement to comply with the terms set forth in the DIP Note, the other DIP Loan Documents, and this Interim Order, and with the Approved Budget, in determining to enter into the postpetition financing arrangements provided for herein and to consent to the Debtors' use of Cash Collateral as set forth herein. The Prepetition Biofuels Bonds Secured Parties are relying upon the Debtors' agreement to comply on the terms set forth in the Initial Budget (and thereafter any Approved Budget) and this Interim Order in determining to consent to the use of Cash Collateral and entering into the postpetition financing arrangements provided for herein. The Debtors shall provide the DIP Lender a revised proposed budget every other Thursday commencing with the second Thursday after the date hereof and continuing each two week period thereafter (each, a "**Proposed Budget**"). If a Proposed Budget is approved by the DIP Lender, it shall become the Approved Budget.

(v)     Sale Process. The DIP Lender's willingness to make the DIP Loans and the Prepetition Bonds Secured Parties' willingness to consent to the use of Cash Collateral (each on the terms and subject to the conditions set forth in the DIP Loan Documents and this Interim Order) is predicated upon (i) the Debtors filing a motion seeking approval of an order approving, among other things, the DIP Lender as a stalking horse bidder, the Bidding Procedures, the Break-Up Fee, and the Expense Reimbursement (each as defined in the Stalking Horse Purchase Agreement, as defined in the DIP Note) in the form attached as Exhibit A to the Stalking Horse Purchase Agreement and otherwise in form and substance acceptable to DIP Lender (the "**Bidding Procedures Order**" and the motion seeking entry of such order, the "**Bidding Procedures Motion**") in accordance with the Milestones (as defined in the DIP Note) and (ii) the Debtors' agreement to the Milestones as set forth in the DIP Note. Absent such arrangements, the DIP

Lender and the Prepetition Bonds Secured Parties would not have agreed to make the DIP Loans or consent to the use of Cash Collateral as provided in the DIP Loan Documents and this Interim Order.

(vi)    <u>Certain Conditions to DIP Facility</u>. The DIP Lender's willingness to make the DIP Loans is conditioned upon, among other conditions set forth in the DIP Note: (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the obligations thereunder, and to confer upon the DIP Lender all applicable rights, powers, and remedies thereunder in each case as modified by this Interim Order; (b) the Debtors' obtaining Court approval of and compliance with the "**<u>Milestones</u>**" set forth in the DIP Note, which are hereby approved in all respects; and (c) the DIP Lender being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, perfected security interests in and liens upon all property and assets of the Debtors, other than assets of Fulcrum BioEnergy, Inc., including, but not limited to, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (i) all property and assets comprising Prepetition Bonds Collateral and (ii) all other property and assets of the Debtors, including any property or assets consisting of "**<u>Excluded Collateral</u>**"[6] under any of the Prepetition Bond Documents and any other Collateral Documents (as defined in the DIP Note) (collectively hereinafter referred to as the "**<u>DIP Collateral</u>**" which, for avoidance of doubt, shall (subject to the entry of the Final Order granting such relief) include, the proceeds (the "**<u>Avoidance Proceeds</u>**") of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state,

---

[6] For the avoidance of doubt, DIP Collateral shall not include the FT Catalyst and FT CANS (as defined in the DIP Note).

federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "**Avoidance Actions**")).

(vii)    Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender, including, without limitation, pursuant to this Interim Order, has been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, and the DIP Superpriority Claim (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

(viii)    Sections 506(c) and 552(b). The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in this Interim Order that as a material inducement to the DIP Lender to agree to provide the DIP Facility and the Prepetition Bonds Secured Parties' consent to the priming by the DIP Facility and to the use of Cash Collateral as set forth in this Interim Order, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Lender's and the Prepetition Bonds Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, and (c) the consensual use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Note, and the terms of this Interim Order, subject to the entry of a Final Order granting such relief, the DIP Lender and each of the Prepetition Bonds Secured Parties are entitled to receive (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(ix)     <u>Good Cause</u>.  Good cause has been shown for the entry of this Interim Order.  The relief requested in the Motion is necessary, essential, and appropriate under the circumstances as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) pursue a Court-approved marketing and sale process, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, and their assets.  The terms of the DIP Facility and this Interim Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facility and this Interim Order are the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Lender and the Prepetition Bonds Secured Parties.

(x)     <u>Adequate Protection</u>. The Prepetition Bonds Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Bonds Collateral (including Cash Collateral), as set forth in this Interim Order.  Any and all liens, claims, and encumbrances that may exist in the Prepetition Bonds Collateral and are junior to the Prepetition Bonds Liens have no interest in the Prepetition Bonds Collateral and are not entitled to adequate protection.

(xi)     <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

(xii)     <u>Interim Hearing</u>.  Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight

courier or hand delivery, to (a) the Office of the United States Trustee for the District of Delaware, (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lender; (d) the Biofuels Trustee, (e) PLC Administration LLC; (f) the Office of the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) all parties that, to the best of the Debtor's knowledge, information, and belief, have asserted a lien in the Debtor's assets; (i) the Securities and Exchange Commission; (j) the Banks; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) any such other party entitled to notice pursuant to Local Rule 9013-1(m). Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c), and the Local Rules.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

Section 1.    <u>Authorization and Conditions to Financing and Use of Cash Collateral</u>.

1.1    <u>Motion Granted</u>. The Motion is granted on an interim basis solely to the extent provided in this Interim Order.  Any objections to the entry of this Interim Order that have not been withdrawn, waived, resolved, or settled, are hereby denied and overruled on the merits.

1.2    <u>Authorization of DIP Financing and Use of Cash Collateral</u>.

(a)    The Debtors are hereby authorized to immediately borrow, incur, and guarantee (as applicable) the DIP Loans, pursuant to the terms and conditions of the DIP Loan Documents, this Interim Order and the Approved Budget, in an aggregate principal amount not to exceed $3,204,103 with such Interim DIP Loan to be made upon entry of this Interim Order and

satisfaction of other conditions set forth in the DIP Loan Documents and in accordance with the Approved Budget.

(b)     The Debtors are hereby authorized to (i) borrow under the DIP Facility and use Cash Collateral during the period (the "**Interim Financing Period**") commencing on the date of this Interim Order through and including the earlier to occur of (x) the date of entry of the Final Order or (y) the occurrence of a DIP Termination Event (as defined below) solely in accordance with, and for the purposes permitted by, the DIP Loan Documents, this Interim Order and the Approved Budget and (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Note and other DIP Loan Documents, all pursuant to the terms and conditions of this Interim Order, the Approved Budget, the DIP Note, and the other DIP Loan Documents.  The Initial Budget is hereby approved in all respects.

1.3     Financing Documents.

(a)     Authorization. The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents.  No obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)    <u>Approval; Evidence of Borrowing Arrangements</u>. The DIP Loan

Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their

Estates, and any successors thereto, including, without limitation, any trustee appointed in any of

these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion

of any of these Chapter 11 Cases (collectively, the "**<u>Successor Cases</u>**"), and their creditors and

other parties in interest, in each case, in accordance with the terms of this Interim Order and the

DIP Loan Documents.

(c)    <u>Payment of DIP Fees and Other Expenses</u>. Any and all fees and expenses

payable pursuant to the DIP Loan Documents (collectively, any and all such fees and expenses,

the "**<u>DIP Fees</u>**") are hereby approved and the Debtors are hereby authorized to pay, in cash, all

reasonable and documented out-of-pocket costs, disbursements, and expenses the DIP Lender

incurred at any time, as provided by the DIP Loan Documents and this Interim Order in accordance

with Section 5.15 hereof upon the presentment to the Office of the U.S. Trustee, counsel for the

Committee (if any), and the Debtors of their fee and expense statements or invoices, in summary

form, which shall not be required to contain time entries but shall include the number of hours

billed by the applicable professional and a summary statement of services provided and the

expenses incurred (redacted if necessary for privileged, confidential or otherwise sensitive

information), to the extent available in the Approved Budget and in accordance with the DIP Note.

For the avoidance of doubt, the professionals to the DIP Lender shall not be required to file an

application seeking compensation for services or reimbursement of expenses with the Court or

comply with the U.S. Trustee fee guidelines.  Within ten (10) calendar days of presentment of such

statements, if no written objection to the reasonableness of the fees and expenses charged in any

such invoice (or portion thereof) is made by the U.S. Trustee, the Committee (if any), or the

Debtors, the Debtors shall pay in cash all such fees and expenses of the DIP Lender, and its advisors and professionals. Any such objection to the payment of such fees or expenses shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent such an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the objecting party and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice. This Court shall resolve any dispute as to the reasonableness of any fees and expenses. Except as otherwise provided in this Interim Order, the DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

(d)     <u>Amendments to DIP Loan Documents</u>. Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtors and the DIP Lender may make amendments, modifications, or supplements to any DIP Loan Document, and the DIP Lender may waive any provisions in the DIP Loan Documents, without further approval of the Court; *provided that* any amendments, modifications, or supplements to any DIP Loan Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees, or to add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents (collectively, the "**<u>Material DIP Amendments</u>**"), shall be filed with the Court, and the Debtors shall provide not less than three (3) Business Days prior written notice of any Material DIP Amendment and the proposed the effective date thereof to (i) counsel to the Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the Debtors' 30 largest unsecured creditors on a

consolidated basis and (ii) the U.S. Trustee; *provided*, *further*, *that* the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment that is subject to an objection filed and served on the DIP Lender and the Debtors within three (3) Business Days following receipt of such Material DIP Amendment must be approved by the Court prior to becoming effective.  For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court from the Biofuels Trustee.

      1.4    <u>Indemnification</u>. The Debtors are authorized to indemnify and hold harmless the DIP Lender, and, each Indemnified Person (as defined in the DIP Loan Documents), in accordance with, and as set forth in, the DIP Note, including that the Debtors shall not be liable for indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability or expense results solely from that Indemnified Person's fraud, gross negligence, or willful misconduct as determined in a final non-appealable judgment by a court of competent jurisdiction.

Section 2.    <u>Postpetition Lien; Superpriority Administrative Claim Status.</u>

      2.1    <u>Postpetition Lien</u>.

      (a)    <u>Postpetition DIP Lien Granting</u>. To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "**<u>DIP Liens</u>**")

in and upon all DIP Collateral, subject and subordinate to the Carve-Out and the rankings and priority set forth in Section 2.1(b) below.

(b)     <u>DIP Lien Priority in DIP Collateral</u>. The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided*, *however*, *that* the DIP Liens on (A) the Prepetition Bonds Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject to the Carve-Out; and (B) any other assets of the Debtors ("**<u>Unencumbered Assets</u>**") that were not subject to any validly perfected liens or security interest as of the Petition Date (including, subject to the entry of a Final Order, Avoidance Proceeds) shall be subject and subordinate to the Carve-Out.  For the avoidance of doubt, the DIP Liens shall prime and be senior to the Prepetition Bond Liens of the Prepetition Bonds Secured Parties on the Prepetition Bonds Collateral.

(c)     <u>Postpetition Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Bonds Secured Parties Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "**<u>Perfection Act</u>**").  Notwithstanding the foregoing, if the DIP Lender or the

28

Prepetition Trustees, as applicable, shall, in their sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the DIP Lender or Prepetition Trustees, as applicable, is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents and this Interim Order, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  The DIP Lender or Prepetition Trustees, as applicable, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim Order in accordance with applicable law.  Should the DIP Lender or Prepetition Trustees, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)      To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by this Interim Order (including the DIP Liens and the Prepetition Bonds Secured Parties Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of this Court; *provided*, *however*, *that* nothing herein shall excuse the

Debtors from payment of any local fees, if any, required in connection with such liens.  By virtue of the terms of this Interim Order, to the extent that the DIP Lender or Prepetition Trustees, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Interim Order without further action by the DIP Lender or Prepetition Trustees, as applicable.

(e)     Except as provided in this Interim Order, the DIP Liens, the DIP Superpriority Claim, the Prepetition Bonds Secured Parties Adequate Protection Liens, and the Prepetition Bonds Secured Parties Adequate Protection Claims (as defined below) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

2.2     <u>Superpriority Administrative Expenses</u>.

(a)     <u>DIP Loans</u>. Subject to the Carve-Out, on account of all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP Lender is granted allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all

other obligations, liabilities, and indebtedness of the Debtors (including, for the avoidance of doubt, Debtor Fulcrum BioEnergy, Inc.), whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(b), 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors (including, for the avoidance of doubt, Debtor Fulcrum BioEnergy, Inc.) and all proceeds thereof (including, subject to entry of the Final Order, proceeds of Avoidance Actions) (such superpriority administrative expense claim, the "**DIP Superpriority Claim**").

2.3    <u>Carve-Out</u>.  For purposes of this Interim Order, "**Carve-Out**" shall mean: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below) (collectively, the "**Statutory Fees**"); plus the sum of (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below) (the "**Chapter 7 Trustee Carve-Out**"); (iii) to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise, subject to the Approved Budget, all unpaid fees, costs, disbursements and expenses (the "**Allowed Professional Fees**") incurred or earned by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") or the Committee pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professionals**") at any time

before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to, on or after delivery of a Carve-Out Trigger Notice (the "**Pre-Trigger Carve-Out Cap**"); and (iv) Allowed Professional Fees of Professional in an aggregate amount not to exceed $250,000 (inclusive of any prepetition retainer held by the applicable Professional Person to the extent not previously applied or returned) incurred after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice (such date, the "**Trigger Date**"), to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**" and such amounts set forth in clauses (i) through (iv), the "**Carve-Out Cap**"); *provided that*, nothing herein shall be construed to impair any party's ability to object to court approval of the fees, expenses, reimbursement of expenses or compensation of any Professional Person.  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by the DIP Lender to the Debtors, their restructuring counsel, counsel to the Prepetition Trustees, the U.S. Trustee, and counsel to the Committee, if any (collectively, the "**Carve-Out Trigger Notice Parties**"), which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event, and shall describe in reasonable detail such DIP Termination Event that is alleged to have occurred and be continuing and stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  Neither the DIP Lender nor the Prepetition Bonds Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, other than payment or reimbursement of any fees or disbursements from proceeds of DIP Collateral to the extent of the Carve-Out.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP

Lender or the Prepetition Bonds Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

2.4     **Professional Fees Escrow Account.** Consistent with the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System and Maintain Existing Bank Accounts and (II) Granting Related Relief*, the Debtors are authorized to open a new bank account or designate an existing bank account that shall function as a segregated account held in trust for and exclusively available for the payment of fees and expenses of Professionals pursuant to this Interim Order (the "**Professional Fees Escrow Account**") in the amount equal to, but not to exceed, the Allowed Professional Fees budgeted for Professionals retained by the Debtors and a Committee, if any (the "**Budgeted Professional Expenses**").  Except for funding the Carve-Out from the DIP Collateral, the DIP Lender shall have no responsibility, liability, or obligation whatsoever to fund, direct payment or reimbursement of any fees or disbursements, or otherwise ensure that the Debtors fund the Professional Fees Escrow Account or that the Professional Fees Escrow Account has funds equal to the aggregate amount of the Budgeted Professional Expenses for any applicable period.  The Debtors are authorized and directed to fund the Professional Fees Escrow Account on a weekly basis in an amount up to, but not to exceed, the Budgeted Professional Expenses for that week.  Such funds shall be held in an identifiable segregated account for the benefit of the Professionals to be applied to the Allowed Professional Fees of the Professionals that are approved for payment pursuant to one or more orders of this Court.  Any Allowed Professional Fees payable to the Professionals shall be paid first out of the Professional Fees Escrow Account.  Any excess amounts in the Professional Fees Escrow Account after payment of the Professional Fees shall be subject in all respects to the DIP Liens.  The funds

in the Professional Fees Escrow Account shall remain DIP Collateral (subject to the Carve-Out) unless and until such funds are paid to the Professionals.

      2.5    <u>Prepetition Bonds Secured Parties Adequate Protection</u>.

      (a)    <u>Adequate Protection Claims and Liens</u>. The Prepetition Bonds Secured Parties are entitled, pursuant to sections 361, 363(e), 364(d)(1), 503(b), 507(a), and 507(b) of the Bankruptcy Code and effective as of the Petition Date, to adequate protection of their respective interests in the Prepetition Bonds Collateral, including any Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Bonds Secured Parties' interests in the Prepetition Bonds Collateral from and after the Petition Date. On account of such adequate protection, the Prepetition Bonds Secured Parties are hereby granted the following, in each case subject to the DIP Liens and the Carve-Out (collectively, the "**<u>Adequate Protection</u>**"):

      (i)    <u>Prepetition Adequate Protection Liens</u>. Subject to Section 4.1 and in addition to all valid and enforceable security interests existing in favor of the Prepetition Bonds Secured Parties and not in substitution thereof, the Prepetition Bonds Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "**<u>Prepetition Adequate Protection Liens</u>**"), which liens shall be, with respect to: (A) the Prepetition Bonds Collateral (whether in existence on the Petition Date or hereafter arising), subject and subordinate solely to the Carve-Out, Permitted Liens and the DIP Liens; and (B) Unencumbered Assets, subject to the Carve-Out and the DIP Liens.

      (ii)    <u>Adequate Protection Superpriority Claims</u>. To the extent of any Diminution in Value, the Prepetition Bonds Secured Parties are hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy

Code (the "**Prepetition Bonds Secured Parties Adequate Protection Claims**"), which shall be allowed claims against each of the Debtors (jointly and severally), with priority (except as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The Prepetition Bonds Secured Parties Adequate Protection Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors, subject to the Carve-Out, Permitted Liens, and the DIP Superpriority Claims.

(b)     _Reporting._ The Debtors shall timely provide the Prepetition Bonds Secured Parties with (x) reasonable access to the Debtors' facilities, management, books, and records required under the Prepetition Bond Documents and (y) copies of all financial reporting provided to the DIP Lender pursuant to the DIP Loan Documents substantially simultaneously with such delivery to the DIP Lender.

2.6     _Permitted Lien Adequate Protection._  To the extent that any party has a Permitted Lien[7] or any other valid, enforceable, perfected and non-avoidable lien, claim, or encumbrance on or in the Prepetition Bonds Collateral that is senior to or _pari passu_ with the Prepetition Bond Liens, such party shall be entitled to the Adequate Protection, including the Prepetition Adequate

---

[7]     For purposes of this Interim Order, "**Permitted Liens**" shall mean any liens that are senior by operation of law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Bond Liens.

Protection Liens and the Prepetition Bonds Secured Parties Adequate Protection Claims in the order of priority of such liens as of the Petition Date.

Section 3.     DIP Termination Events; Waivers; Rights and Remedies; Relief from Stay.

3.1     DIP Termination Events. Each of the following shall constitute a "DIP Termination Event" unless waived in writing by the DIP Lender and in accordance with the applicable DIP Loan Documents: (i) the occurrence of any "**Event of Default**" as that term is defined in the DIP Note; (ii) any failure to meet or satisfy any Milestone in accordance with the applicable DIP Loan Documents; (iii) the occurrence of the "**Maturity Date**" as defined in the DIP Note; (iv) any material violation, breach, or default by any Debtor with respect to any of its obligations under this Interim Order or the DIP Loan Documents; (v) the termination of the DIP Loan Documents, or the modification of this Interim Order in a manner adverse to the DIP Lender or any of the Prepetition Bonds Secured Parties without the prior written consent of such party; (vi) entry of any order authorizing any party in interest to reclaim any of the DIP Collateral, granting any party in interest relief from the automatic stay with respect to the DIP Collateral, or requiring that Debtors turnover any of the DIP Collateral, in each case prior to full, final and indefeasible repayment in full in cash of all DIP Obligations and Prepetition Bond Obligations and with respect to DIP Collateral having value in excess of $25,000; (vii) conversion of any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (viii) a trustee is appointed or elected in any Chapter 11 Case, or an examiner with the power to operate the Debtors' businesses is appointed in any Case; (ix) the date that is thirty-five (35) calendar days following the entry of this Interim Order if a Final Order is not entered in form and substance acceptable to the DIP Lender and the Prepetition Bonds Secured Parties by such date; (xi) the date of the Final Hearing, if this Interim Order is modified at the Final Hearing in a manner unacceptable to the DIP Lender or the Prepetition Bonds Secured

Parties; (xii) the Debtors shall withdraw the Bidding Procedures Motion and/or propose an Alternative Transaction[8] that, in any case, does not provide for the repayment in full, in cash, of the DIP Obligations directly from the proceeds of such Alternative Transaction and upon the initial closing of such Alternative Transaction; (xiii) the DIP Lender shall have received a Phase II environmental site assessment of the Real Property (as defined in the Stalking Horse Purchase Agreement), conducted by a firm selected by the DIP Lender, which contains evidence of contamination at the applicable site(s) above applicable thresholds such that any further investigation or that are above the amounts listed in the Phase I environmental site assessment or similar report previously received by the DIP Lender or any Material Remediation (as defined in the Stalking Horse Purchase Agreement) is required to achieve a level of completion of either Historical Recognized Environmental Condition (HREC) or Controlled Recognized Environmental Condition (CREC) as defined in the ASTM 1527 standard for Phase I Environmental Site Assessments; provided that a copy of the Phase II environmental site assessment was provided to the Debtors within a reasonable time upon receipt by the DIP Lender; provided, further, that the DIP Lender may not terminate if the Debtors agree to reduce the Purchase Price (as defined in the Stalking Horse Purchase Agreement) by the amount of the estimated costs of the Material Remediation; and (xiv) any modification, amendment, vacatur or

---

[8] "**Alternative Transaction**" means any transaction (or series of transactions), whether direct or indirect, concerning a sale, merger, acquisition, issuance, financing, recapitalization, reorganization, liquidation, transfer, or other disposition, in each case, pursuant to which all or a portion of the Acquired Assets (as defined in the Stalking Horse Purchase Agreement) are to be transferred to any individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, labor union, estate, government or other governmental or regulatory body, agency or political subdivision thereof of any nature, whether foreign, federal, state or local, or any agency, branch, department, official, entity, instrumentality or authority thereof, or any court, judicial body, tribunal, arbitrator or arbitration panel (public or private) of applicable jurisdiction or other entity or group other than the DIP Lender or any of its Affiliates or any plan of reorganization that does not contemplate or that does not permit the sale of the Acquired Assets to the DIP Lender pursuant to the Stalking Horse Purchase Agreement.

stay of this Interim Order in any manner not consented to in writing by the DIP Lender and the Biofuels Trustee.

        3.2    <u>Additional DIP Termination Events</u>.

        (a)    Prior to the payment in full in cash of all Prepetition Bond Obligations and all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event: (i) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full in cash of the DIP Obligations at the initial closing of such transaction, other than as provided in this Interim Order or as may be otherwise permitted pursuant to the DIP Loan Documents; (ii) to challenge the application of any payments authorized by this Interim Order pursuant to section 506(b) of the Bankruptcy Code; (iii) to propose or support any challenge pursuant to Section 4.1 of this Interim Order, or any challenge by any party in interest seeking to limit or prevent the DIP Lender or the Prepetition Bonds Secured Parties from exercising their credit bid rights in connection with the sale of any assets of the Debtors; *provided*, *that* the Debtors' response to any information request by a party in interest shall not constitute "<u>support</u>" of a challenge; or (iv), except the extent permitted under Section 3.4 hereof if the Debtors dispute the validity or the occurrence of a DIP Termination Event, to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would interfere with or modify (A) the rights and remedies of the DIP Lender or any of the Prepetition Bonds Secured Parties against the Debtors as provided in this Interim Order, any of the DIP Loan Documents or any of the Prepetition Bond Documents (B) the exercise of such rights or remedies by the DIP Lender or any of the Prepetition Bonds Secured Parties against the Debtors in accordance with the DIP Loan Documents, this Interim Order or the Prepetition Bond

Documents; *provided*, *however*, *that* the DIP Lender and the Biofuels Trustee may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender and the Prepetition Bonds Secured Parties.

(b)    It shall also be a DIP Termination Event if the Debtors propose or support any chapter 11 plan or the sale of all or substantially all of the Debtors' assets (other than pursuant to the Sale Procedures Motion and the Sale Motion), or seek entry of an order confirming a chapter 11 plan or approving such non-conforming sale, that is not conditioned upon the payment of the DIP Obligations, in full in cash, directly from the proceeds of such transaction and upon the initial closing of such transaction, without the written consent of the DIP Lender and the Biofuels Trustee, as applicable.

3.3    <u>Rights and Remedies upon a DIP Termination Event</u>.  Upon the expiration of five (5) business days following the delivery of a written notice by the DIP Lender of the occurrence of and during the continuance of a DIP Termination Event (such five (5) business day period, the "**Remedies Notice Period**"), (a) the DIP Lender shall be entitled to take any act or exercise any right or remedy as provided in this Interim Order or any DIP Loan Document, as applicable, including, without limitation, (i) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains; (iii) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) invoke the right to charge interest at the default rate under the DIP Loan Documents; and/or (v) stop lending; and (b) the Biofuels Trustee shall (i) be entitled to terminate and/or revoke the Debtors' right, if any, under this Interim Order and the other DIP Loan Documents to use any Cash

Collateral and all such authority to use Cash Collateral shall cease and (ii) have automatic and immediate relief from the automatic stay with respect to the Prepetition Bonds Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available under the Prepetition Bond Documents and applicable non-bankruptcy law.  For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, the Debtors may use Cash Collateral to fund the Carve-Out and in amounts necessary to avoid immediate and irreparable harm to the Debtors' Estates all in accordance with this Interim Order and the Approved Budget, or that have otherwise been approved in advance in writing by the DIP Lender.

3.4    <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to (i) permit the DIP Lender and Prepetition Trustees to perform any act authorized or permitted under or by virtue of this Interim Order, the DIP Note, or the other DIP Loan Documents, as applicable, including, without limitation, (i) to implement the postpetition financing arrangements authorized by this Interim Order, (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Bond Obligations and DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Loan Documents, and (iv) subject to the Remedies Notice Period, and *provided that* the Debtors or any party in interest with requisite standing has not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period, to take any action and exercise all rights and remedies provided to

it by this Interim Order, the DIP Loan Documents, or applicable law.  For the avoidance of doubt, the Debtors may seek an emergency hearing during the Remedies Notice Period to dispute the validity or occurrence of a DIP Termination Event.

Section 4.     <u>Representations and Covenants.</u>

4.1     <u>Reservation of Third Party Challenge Rights</u>. The stipulations, releases, agreements, and admissions contained in this Interim Order, including, without limitation, paragraph E hereof, and the releases contained in clause (vii) thereof, and paragraph 5.17 hereof (collectively, the "**<u>Prepetition Lien and Claim Matters</u>**"), shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative and all creditors and parties-in-interest, and all of their successors in interest and assigns, including without limitation the Committee, unless, and solely to the extent that (a) a party-in-interest has sought standing and requisite authority to commence a Challenge (as defined below) (other than the Debtors, as to which the ability to commence any Challenge is irrevocably waived and relinquished) by timely filing an appropriate pleading (which shall include as an attachment or exhibit any applicable adversary complaint) under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 4.1) challenging all or any portion of the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing an adversary proceeding or other contested matter, a "**<u>Challenge</u>**") by no later than (i) the date which is 75 calendar days after entry of this Interim Order, (ii) any such later date as has been agreed to, in writing, by the Biofuels Trustee, or (iii) such later date as set by an order of the Court for cause shown (such time period established by the foregoing clauses (i) through (iii), the "**<u>Challenge Period</u>**"); *provided that* if a chapter 11 trustee is appointed or the Chapter 11 Cases

are converted to cases under chapter 7 prior to the expiration of the Challenge Period, the chapter 11 or chapter 7 trustee, as applicable, shall have until the later of (1) the expiration of the Challenge Period, and (2) the thirtieth (30th) day after the appointment of the chapter 11 trustee or conversion of the Chapter 11 Cases to cases under chapter 7, as applicable, to commence a Challenge; *provided further*, if any adversary proceeding or contested matter is timely filed and is pending on the date, if any, on which any of the Chapter 11 Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates, without any further authorization or order of the Court; *provided further* that the filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a complaint initiating a Challenge, shall extend the Challenge Period with respect to that party until two business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.

4.2     Binding Effect. To the extent no Challenge is timely commenced by the expiration of the Challenge Period, or to the extent such proceeding does not result in a final non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, or order of or hearing before this Court, and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall become binding, conclusive and final on any person, entity or party-in-interest in the Cases and their successors and assigns, and in any Successor Case for all purposes, and shall not be subject to any challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Debtors' estates. Notwithstanding the foregoing, if any Challenge Proceeding is timely commenced, Prepetition Lien and Claims Matters shall nonetheless remain binding and preclusive

(as provided in this paragraph) on the Debtors, the Committee (if any), and any other person, entity or party-in-interest, except as to any such findings and admissions that were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee (if any), standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition Bond Documents or the Prepetition Bond Liens on the Prepetition Bonds Collateral.

Section 5.       Other Rights and DIP Obligations.

5.1       No Modification or Stay of this Interim Order.  The DIP Lender has acted in good faith in connection with the DIP Facility and with this Interim Order, and their reliance on this Interim Order is in good faith, and the DIP Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

5.2       Rights of Access and Information. The Debtors shall comply with the rights of access and information afforded to the DIP Lender under the DIP Loan Documents and the Prepetition Bonds Secured Parties under the Prepetition Bond Documents.

5.3       Power to Waive Rights; Duties to Third Parties.

(a)       Subject to the terms of the DIP Loan Documents, the DIP Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lender (the "**DIP Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights; *provided that*, the DIP Lender shall obtain the prior written consent of the Prepetition Trustee for any waiver that affects any rights of the applicable

Prepetition Bonds Secured Parties hereunder or any treatment of the Prepetition Bond Obligations. Any waiver by the DIP Lender of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Lender.

(b)    The Prepetition Trustee shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the applicable Prepetition Bondholders (the "**Prepetition Bondholder Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Prepetition Bondholder Rights; *provided that*, the Prepetition Trustee shall obtain the prior written consent of the DIP Lender for any waiver that affects any rights of the DIP Lender hereunder or any treatment of the DIP Obligations.  Any waiver by the Prepetition Trustee of any Prepetition Bondholder Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein. Any delay in or failure to exercise or enforce any Prepetition Bondholder Right shall neither constitute a waiver of such Prepetition Bondholder Right, subject the Prepetition Trustee or any Prepetition Bondholder to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the Prepetition Trustee or any Prepetition Bondholder.

5.4    No Unauthorized Disposition of Collateral; Use of Cash Collateral; Investigation Budget.

(a)    The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including receivables and Cash Collateral), other than pursuant to the terms of this Interim Order or as permitted by the DIP Loan Documents, and the Debtors are authorized to use Cash Collateral solely in a manner consistent with this Interim Order, the Approved Budget and the DIP Loan Documents (including permitted variances and exclusions to the Approved Budget permitted thereunder).

(b)    Notwithstanding anything herein to the contrary, no portion of the proceeds of the DIP Facility, the DIP Collateral or the Prepetition Bonds Collateral, including Cash Collateral, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (i) preventing, hindering, impeding, or delaying any of the DIP Lender's or Prepetition Bonds Secured Parties' enforcement or realization upon, or exercise of rights in respect of, any of the DIP Collateral or Prepetition Bonds Collateral, other than to seek (based on a good faith assertion) a determination that a DIP Termination Event (as defined below) has not occurred or is not continuing or in connection with a remedies hearing, (ii) seeking to amend or modify any of the rights or interests granted to the DIP Lender or Prepetition Bonds Secured Parties under this Interim Order or the DIP Loan Documents, including seeking to use Cash Collateral on a contested basis, (iii) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any Challenge or any other actions under chapter 5 of the Bankruptcy Code (or any similar law), against the DIP Lender or any Prepetition Bonds Secured Party, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or (iv) asserting, joining, commencing, supporting, investigating,

or prosecuting any Challenge, or any other action for any claim, counterclaim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the material interests of the DIP Lender or any Prepetition Bonds Secured Party, arising out of, in connection with, or relating to the DIP Loan Documents or the Prepetition Bond Documents, or the transactions contemplated thereunder, including, without limitation, (A) any action arising under the Bankruptcy Code, (B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the validity and extent of the DIP Obligations or the Prepetition Bond Obligations or the validity, extent, perfection and priority of the DIP Liens or the Prepetition Bond Liens, (D) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, re-characterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against, or with respect to, the DIP Liens or the Prepetition Bond Liens, in whole or in part, or (E) appeal or otherwise challenge this Interim Order or the Final Order.  Notwithstanding the foregoing, no more than $25,000 in the aggregate of the proceeds of the DIP Facility, DIP Collateral, or Cash Collateral may be used by any Committee in connection with the investigation of, but not litigation of, any potential Challenge.

5.5    <u>No Waiver</u>. The failure of the DIP Lender or the Prepetition Bondholders, as applicable, to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facility, the Prepetition Bond Documents, or this Interim Order, as applicable, shall not constitute a waiver of any of the DIP Lender's or Prepetition Bondholders' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or

otherwise impair the rights of the DIP Lender or the Prepetition Bondholders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender and the Prepetition Bondholders to: (a) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Bondholders.

5.6     <u>Maintenance of Collateral</u>. Unless the DIP Lender otherwise consents in writing, until (i) the payment in full in cash or otherwise acceptable satisfaction of all DIP Obligations and (ii) the termination of the DIP Lender's obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

5.7     <u>Reservation of Rights</u>. The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Lender and each Prepetition Bonds Secured Party, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the Prepetition Bond Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Bonds Collateral, as applicable, or priority in favor of any other party, to object to any sale of

assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

    5.8   <u>Binding Effect</u>.

    (a)   All of the provisions of this Interim Order and the DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of the DIP Lender and each of the Prepetition Bonds Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the DIP Lender and each Prepetition Bonds Secured Party set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Paragraph E of this Interim Order, subject to Section 4.1 hereof (without each of which the DIP Lender would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Bonds Secured Parties would not have consented to the priming of the Prepetition Bond Liens as set forth herein and use of Cash Collateral provided for hereunder) provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Bonds Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim Order or any provision

hereof; *provided that*, in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order; *provided further that* such Final Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order.

(b)     Nothing in these Chapter 11 Cases may impair the DIP Superpriority Claim, the Prepetition Bonds Secured Parties Adequate Protection Claims, and the DIP Lender's and the Prepetition Bonds Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Bonds Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this Interim Order, which shall continue in full force and effect notwithstanding any dismissal of one or more of the Chapter 11 Cases until the DIP Obligations and Prepetition Bond Obligations are indefeasibly paid and satisfied in full. Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Interim Order.

(c)     Except as set forth in this Interim Order, in the event this Court modifies or reverses on appeal any of the provisions of this Interim Order or any of the DIP Loan Documents, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claim, the Prepetition Bonds Secured Parties Adequate Protection Liens and the Prepetition Bonds Secured Parties Adequate Protection Claims or (iii) rights or priorities of the DIP Lender or any Prepetition Bonds Secured

Party pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and the Prepetition Bonds Secured Parties shall be entitled to all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

(d)    This Interim Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Interim Order shall also inure to the benefit of the Debtors, DIP Lender, and each of their respective successors and assigns.

5.9    <u>No Discharge</u>. The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Prepetition Bonds Secured Parties Adequate Protection Liens and the Prepetition Bonds Secured Parties Adequate Protection Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or the DIP Lender has otherwise agreed in writing.

5.10    <u>No Priming of Prepetition Bond Obligations</u>. Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the applicable Prepetition Bondholders and the DIP Lender, no Debtor shall seek authorization from this Court to obtain or incur any indebtedness or enter into an alternative financing facility

other than the DIP Facility (a "**Competing DIP Facility**") seeking to impose liens on any Prepetition Bonds Collateral ranking on a *pari passu* or priming basis with respect to the Prepetition Bond Liens held by the Prepetition Bonds Secured Parties or the DIP Liens held by the DIP Lender; *provided*, *however*, *that* nothing herein shall preclude the Debtors from seeking authorization to incur any indebtedness or enter into any Competing DIP Facility that provides for the payment in full in cash of the DIP Obligations at the initial closing of such Competing DIP Facility.

5.11    Section 506(c) Waiver. Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Lender upon the DIP Collateral, or by the Prepetition Bonds Secured Parties upon the Prepetition Bonds Collateral, as applicable) shall be charged against the DIP Lender or (subject to entry of the Final Order granting such relief) the Prepetition Bonds Secured Parties, or any of the DIP Obligations or Prepetition Bond Obligations or the DIP Collateral or the Prepetition Bonds Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Lender and/or affected Prepetition Bonds Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).

5.12    Section 552(b) Waiver.  Subject to entry of the Final Order granting such relief, the Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Interim Order that the Prepetition Bonds Secured Parties are and shall

each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that

the "equities of the case" exception under section 552(b) shall not apply to the DIP Lender, the

DIP Obligations, the Prepetition Bonds Secured Parties, or the Prepetition Bond Obligations.

     5.13   <u>No Marshaling/Application of Proceeds</u>.

     (a)   Subject to entry of the Final Order granting such relief, in no event shall the

DIP Lender or the Prepetition Bonds Secured Parties be subject to the equitable doctrine of

"<u>marshaling</u>" or any similar doctrine with respect to the DIP Collateral or the Prepetition Bonds

Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP

Loan Documents and the Prepetition Bond Documents, as applicable.

     (b)   Notwithstanding anything to the contrary in this Interim Order, the

respective DIP Obligations shall be satisfied from the proceeds of DIP Collateral.

     5.14   <u>Right to Credit Bid</u>. The Debtors acknowledge and agree that, pursuant to

Section 363(k) of the Bankruptcy Code, the DIP Lender and each of the Prepetition Bonds

Secured Parties shall have the right to credit bid the full amount of the DIP Obligations and the

Prepetition Bond Obligations, respectively, in connection with any sale of the Debtors' assets

pursuant to the Sale Motion or otherwise; *provided* that any credit bid by the Prepetition Bonds

Secured Parties shall: (i) be subject to the rights of parties in interest under Section 4.1 hereof;

and (ii) include cash sufficient to satisfy all DIP Obligations in full in cash, which shall

indefeasibly paid in full in cash upon the initial closing of any Alternative Transaction that

includes a credit bid by the Prepetition Bonds Secured Parties.

     5.15   <u>Payment of DIP Lender Fees and Expenses</u>. Subject to the procedures set forth in

paragraph 1.3 of this Interim Order, the Debtors shall pay (i) the fees and expenses of the DIP

Lender, including its counsel and other advisors, in connection with the Chapter 11 Cases included

to the extent reimbursable under the DIP Facility, the DIP Note, or the other DIP Loan Documents, as applicable, whether incurred before or after the Petition Date and (ii) all out-of-pocket costs and expenses of the DIP Lender incurred in connection with the Chapter 11 Cases, including, without limitation, fees and disbursements of counsel in connection with the enforcement or preservation of any rights under the DIP Facility, the DIP Note, or the other DIP Loan Documents, in each of (i) and (ii), to the extent available in the Approved Budget and in accordance with the DIP Note.

      5.16   <u>Limits on Lender Liability</u>.

      (a)    Solely as a result of making any loan under the DIP Note, authorizing the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Lender, and, subject to entry of the Final Order, the Prepetition Bonds Secured Parties, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "<u>controlling person</u>," "<u>responsible person</u>," or "<u>owner or operator</u>" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or any of the Prepetition Bonds Secured Parties, of any liability for any claims

arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(b)     Subject to entry of the Final Order granting such relief, as to the United States, its agencies, departments, or agents, nothing in this Interim Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

5.17    <u>Release</u>. Each of the Debtors, their Estates and the Prepetition Obligors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit the DIP Lender and each of the Prepetition Bonds Secured Parties, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**<u>Released Parties</u>**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Bond Obligations and the DIP Facility or (ii) the DIP Loan Documents and the Prepetition Bond Documents, as applicable, including, without limitation, (a) any so-called "<u>lender liability</u>" or equitable subordination claims or defenses, (b) any and all "<u>claims</u>" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights,

objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Bond Obligations and the DIP Obligations, the Prepetition Bond Documents and the DIP Loan Documents, or the Prepetition Bond Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Bond Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order; *provided* that, solely for the Prepetition Bonds Secured Parties and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, the foregoing is subject to entry of the Final Order granting such relief. The Debtors are authorized in any payoff letter or similar agreement into which they enter upon payment in full of any DIP Obligations to provide a waiver and release substantially similar to the waiver and release set forth in this Section 5.17 of the DIP Lender and their related parties.

      5.18   <u>Survival</u>. The provisions of this Interim Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claim, the Prepetition Bonds Secured

Parties Adequate Protection Liens, the Prepetition Bonds Secured Parties Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender and the Prepetition Bonds Secured Parties pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the Prepetition Bond Obligations, all of the adequate protection obligations owed to the Prepetition Bonds Secured Parties provided for in this Interim Order and under the Prepetition Bond Documents have been indefeasibly paid in full in cash.

5.19  <u>Proofs of Claim</u>. None of the Prepetition Bonds Secured Parties shall be required to file proofs of claim in any of these Chapter 11 Cases or subsequent cases of any of the Debtors

under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Interim Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Notwithstanding the foregoing, the Prepetition Trustee (on behalf of itself and the applicable Prepetition Bondholders) is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) a master proof of claim in the Debtors' lead Case (and such master proof of claim shall be also deemed filed in each of the Debtors' individual Cases) for any claims of the applicable Prepetition Bonds Secured Parties arising from the Prepetition Bond Documents or in respect of the Prepetition Bond Obligations; *provided*, *however*, *that* nothing in this Interim Order shall waive the right of any Prepetition Bondholder to file its own proof of claim against any of the Debtors.

5.20    <u>No Third Party Rights</u>. Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

5.21    <u>No Avoidance</u>. No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from the DIP Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law, *provided that*, nothing within this paragraph is intended to limit or curtail the provisions of Section 4.1 hereof, with respect to the Prepetition Bond Obligations.

5.22    <u>Reliance on Order</u>. All postpetition advances under the DIP Loan Documents are made in reliance on this Interim Order.

5.23    <u>Payments Free and Clear</u>. Subject to Section 4.1, any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim Order, any subsequent order of this Court or the DIP Loan Documents, shall, subject to the terms of this Section 5.23, be

irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve-Out in all respects.

5.24    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the DIP Lenders or the Prepetition Biofuels Bonds Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Biofuels Bonds Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

5.25    <u>Limited Effect</u>. In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

5.26    <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

5.27    <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

5.28    <u>General Authorization</u>. The Debtors, the DIP Lender, and the Prepetition Bonds Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

5.29    Retention of Exclusive Jurisdiction. This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Note, and the other DIP Loan Documents.

5.30    Final Hearing and Response Dates. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) will be held on October 2, 2024, at 11:00 a.m., prevailing Eastern Time.  The Debtors shall promptly mail copies of this Interim Order to the (a) the Office of the United States Trustee for the District of Delaware, (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lender; (d) the Biofuels Trustee, (e) PLC Administration LLC; (f) the Office of the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) all parties that, to the best of the Debtor's knowledge, information, and belief, have asserted a lien in the Debtor's assets; (i) the Securities and Exchange Commission, (j) the Banks; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or the Committee's counsel if same shall have filed a request for notice. The Debtors may serve the Motion and this Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at the Debtors' claims and noting agent's website: https://www.veritaglobal.net/fulcrum, and such notice is deemed good and sufficient and no further notice need be given.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) the Debtors, P.O. Box 220 Pleasanton, CA 94566, Attn: Mark Smith; (b) proposed counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street. 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert    J.    Dehney    Sr.    (rdehney@morrisnichols.com);    Daniel    B.    Butz (dbutz@morrisnichols.com); Clint M. Carlisle

(ccarlisle@morrisnichols.com); Avery Jue Meng (ameng@morrisnichols.com); (c) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"): 844 King Street, Room 2207, Wilmington, Delaware 19801, Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); (d) counsel to any official committee of unsecured creditors appointed in the cases (the "**Committee**"); (e) counsel to Switch: (i) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Adam Goldberg (Adam.Goldberg@lw.com) and Brian S. Rosen (Brian.Rosen@lw.com); (ii) Richards, Layton & Finger, P.A. 920 N. King Street, Wilmington, DE 19801, Attn: Michael J. Merchant (Merchant@RLF.com); and (f) counsel to UMB Bank, N.A.: (i) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10065, Attn: Alexander Woolverton (awoolverton@kramerlevin.com); Douglas Buckley (dbuckley@kramerlevin.com), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Andrew Magaziner (amagaziner@ycst.com) and shall be filed with the Clerk of the Court, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m. (prevailing Eastern Time), on September 25, 2024.

**Dated: September 12th, 2024**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**