**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FULCRUM BIOENERGY, INC., *et al.* | Case No. 24-12008 (TMH) |
| Debtors[1] | (Jointly Administered) |
| | **Re: D.I. 12, 153, & 199** |

**OBJECTION TO DEBTORS' MOTION
TO SELL ASSETS FREE AND CLEAR OF CLAIMS, LIENS, AND ENCUMBRANCES**

Abeinsa Abener Teyma General Partnership ("AATGP") and its parent Abengoa, S.A. ("Parent" and collectively with AATGP, "Abengoa"), by and through its undersigned counsel, hereby files this objection (this "Objection") to the *Debtors' Motion for (I) An Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving the Debtors' Entry Into Stalking Horse Agreement and Related Bid Protections (C) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (D) Scheduling an Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; (II) An Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment of Designated Executory*

---

[1] The Debtors and Debtors in possession in these chapter 11 cases, along with each debtor's federal tax identification numbers are: Fulcrum BioEnergy, Inc. (3733); Fulcrum Sierra BioFuels, LLC (1833); Fulcrum Sierra Finance Company, LLC (4287); and Fulcrum Sierra Holdings, LLC (8498). The location of the Debtors' service address is: Fulcrum BioEnergy Inc., P.O. Box 220 Pleasanton, CA 94566. All Court filings can be accessed at: https://www.veritaglobal.net/Fulcrum.

*Contracts and Unexpired Leases; and (III) Certain Related Relief*, dated September 11, 2024 [D.I. 12] (the "Sale Motion").[2]  In support of this Objection, Abengoa respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Abengoa (and more specifically, AATGP) was the prime contractor for the Debtors' most significant construction project and is one of the Debtors' largest creditors other than holders of funded debt.  In pending prepetition litigation and arbitration, Abengoa and Fulcrum have asserted claims against each other in excess of $100 million.  While Abengoa vigorously contests Fulcrum's claims, Abengoa's rights of recoupment, setoff, and other defenses must be fully protected if it is later determined that any such claims are valid.

2.     The APA, as currently drafted, cannot be approved because it improperly purports to extinguish creditors' recoupment and setoff rights and other affirmative defenses, blatantly disregarding both the plain text of the Bankruptcy Code and established precedent.  Defenses (including recoupment), by definition, are not "claims" or "interests" that can be discharged in bankruptcy, whether through a section 363 sale or a chapter 11 plan.  As to setoff, the Third Circuit has long held that a creditor's rights are preserved if it timely and expressly asserted its right.

3.     Accordingly, the only fair and equitable outcome is to permit creditors such as Abengoa to retain all of the defenses, including setoff, and recoupment rights available to them under applicable law and allow them to assert those rights *defensively* should the Purchaser (which is acquiring the Debtors' causes of action pursuant to the APA) choose to pursue claims against them.  This is especially true for creditors like Abengoa who have preserved their rights by objecting to the Sale.  Furthermore, Abengoa's status as a secured creditor requires the Debtors to

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the APA (as defined below), as applicable.

provide adequate protection by explicitly providing in any order approving the Sale that Abengoa's setoff rights travel with, and are not extinguished by, the Sale.

4.      To be clear, Abengoa is not asking the Court today to decide the degree and extent to which Abengoa has valid setoff, recoupment, or other defenses or any underlying issues in the parties' litigation. Rather, Abengoa seeks to ensure that rights to which it is entitled to as a matter of law are not inappropriately eviscerated by improper boilerplate buried in a lengthy APA.

## BACKGROUND

### A.      The Chapter 11 Cases and the Postpetition Sale Process

5.      On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

6.      On September 19, 2024, the United States Trustee for Region 3 (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee"). *See* D.I. 74.

7.      On the Petition Date, the Debtors filed the Sale Motion, initially seeking approval of, among other things, (a) procedures (the "Bidding Procedures") for the sale of all or substantially all their assets (the "Sale") and (b) a form of stalking horse purchase agreement, attached thereto as Exhibit B (the "APA"), subject to higher or otherwise better offers in accordance with the Bidding Procedures. As described in detail *infra*, the APA contains several problematic provisions, including overbroad definitions of "Acquired Assets," "Excluded Liabilities," "Claims," and "Encumbrances" that purport to strip creditors of their right to assert recoupment, setoff, or other defenses in contravention of applicable law.

3

8.      On October 11, 2024, the Court entered an order approving bidding procedures and the form of stalking horse agreement (the "Bid Procedures Order").  *See* D.I. 153.

9.      On October 14, 2024, the Debtors filed a *Notice of Sale, Bidding Procedures, Auction and Sale Hearing* [D.I. 156] (the "Sale Notice").  The Sale Notice provides, among other things, that the Debtors will hold an auction (if necessary) on November 7, 2024 and that the Sale hearing will be held on November 12, 2024.

**B.      Abengoa's Claims**

10.      AATGP and Parent are creditors of Debtors Fulcrum Sierra Biofuels, LLC ("Biofuels") and Fulcrum Bioenergy, Inc. ("Bioenergy" and collectively with Biofuels, "Fulcrum").  Abengoa has been embroiled in litigation with Fulcrum since April 2020.

11.      On October 18, 2017, the parties entered into both an Engineering, Procurement and Construction Contract, a copy of which is attached hereto as **Exhibit A** (the "EPC Contract"),[3] wherein AATGP was to serve as the prime contractor for the Project, and a Project Equity Reimbursement Agreement, a copy of which is attached hereto as **Exhibit B** (the "PERA"). The parties entered into several additional, related agreements and supporting documents to facilitate construction of the Project (the "Construction Contracts").

12.      The parties' dispute spans two state court actions brought by Abengoa against Fulcrum pending in Nevada's Second Judicial District ("Washoe County Litigation") and First Judicial District (the "Mechanics Lien Litigation"), as well as an arbitration brought by Abengoa against Fulcrum and administered by the International Chamber of Commerce, International Court of Arbitration (the "ICC Arbitration").  Prior to the Petition Date, both state court actions were

---

[3]    Because the Exhibits are voluminous, counsel to Abengoa will not include the Exhibits for service of this Objection by mail.  In addition to filing the Objection with all Exhibits on the Court's docket (which is also available at no cost on the Debtors' claims agent website, https://www.veritaglobal.net/fulcrum), counsel to Abengoa will provide copies of the Exhibits via email upon request by any party in interest.

stayed, prior to Fulcrum's petition, pending the outcome of the ICC Arbitration. Abengoa and Fulcrum assert claims against one another based on the same general set of facts, circumstances, and Construction Contracts. Each party's claims against the other exceed $100 million.

13.     Abengoa's claims are secured (by mechanics' liens and rights to setoff) and these claims each exceed $100 million. The claims are secured by two mechanics' liens recorded in Storey County, Nevada, the site of the Fulcrum property that is the primary asset of, and therefore subject of, the Sale Motion. *See* May 19, 2021 Recorded Notice of Lien in the amount of $1,128,774.74 as **Exhibit C**; July 29, 2021 Recorded Notice of Lien in the amount of $95,076.396.00 as **Exhibit D**.

14.     The factual underpinnings that create Fulcrum's nine-figure liability to Abengoa are supported by the allegations contained in the Mechanics Lien Litigation Complaint (*See* file stamped copy at **Exhibit E**), the Washoe County Litigation First Amended Verified Complaint (*See* "Washoe Amd. Compl." at **Exhibit F**), and the ICC Arbitration Amended Request for Arbitration (the "Arbitration Demand").[4]   A brief, non-exhaustive summary of those claims follows:

    a.     Fulcrum repeatedly breached the EPC Contract and related Construction Contracts by failing to timely reimburse Abengoa for work performed, failing to timely approve change orders required by Fulcrum's ever expanding and shifting project demands that exceeded the scope of the Construction Contracts, and failing to pay those change orders approved. *See* Washoe Amd. Compl. ¶¶ 8–63 and Fifth Cause of Action at 21.

    b.     As early as May 2020, Abengoa identified "Fulcrum's Current Insolvent Position and Indebtedness to [Abengoa]." *Id.* at Heading E, ¶¶ 83–87.

        i.     One of the many reasons Fulcrum was able to delay its petition to September 2024, and default on tens of millions of dollars of obligations to debtors after incurring the Abengoa debt, was its fraudulent draw against an irrevocable $18,200,000 Letter of Credit by Applicant Abengoa. *Id.* ¶¶ 83–87 *and* Fourth Cause of Action  titled

---

[4]     The Amended Arbitration Demand is subject to confidentiality restrictions. Abengoa will file a copy of the Arbitration Demand on the docket under seal upon request by the Court.

"Material Fraud, Constructive Fraud, and Fraudulent Concealment in the Draw Demand" at 20.

    ii.    Fulcrum's fraudulent draw on the $18,200,000 Letter of Credit remains an Abengoa claim in the pending ICC Arbitration.

c.    Abengoa's 101-page Amended Arbitration Demand provides a more developed factual record supporting its claims against Fulcrum and evidence of the pre-petition debts Fulcrum owes it. By way of example only, Fulcrum's nine-figure prepetition debt owed Abengoa is supported by the following:

    i.    <u>Fulcrum's breach of multiple Construction Contracts</u>. Fulcrum breached numerous provisions of the Construction Contract by, among other things:

    (1)    Failing to timely respond to change order requests and other Project documents that required Fulcrum's input;

    (2)    Failing to timely approve necessary or owner-directed change orders;

    (3)    Failing to cooperate with Abengoa in good faith during performance;

    (4)    Refusing to execute and/or pay for change orders for necessary or owner-directed changes;

    (5)    Failing to reimburse and/or make payments due and owing to Abengoa for work on or materials purchased for the Project;

    (6)    Failing to adequately administer or fund the Project;

    (7)    Wrongfully rejecting Project schedule updates and/or delays in reviewing Project schedule updates;

    (8)    Failing to create or maintain an appropriate Project schedule;

    (9)    Directing Abengoa's means and methods;

    (10)    Insisting on artificial and impossible contract schedule milestones;

    (11)    Wrongfully attempting to draw the Letter of Credit without a contractual justification and without providing the contractually required notice;

    (12)    Wrongfully and needlessly accelerating Abengoa's work on the Project without intending to pay for the costs;

(13)     Providing Abengoa preliminary engineering materials for and technical descriptions of the Project which were inadequate; and

(14)     Hindering and delaying Abengoa's progress and work on the Project;

(15)     Wrongfully replacing Abengoa with a substitute and unlicensed contractor and purporting to terminate Abengoa for cause. Because Fulcrum's default termination was wrongful, the termination may be seen as one for convenience under the EPC Contract.

ii.     <u>Fraudulent concealment.</u>  Fulcrum fraudulently concealed, despite its duty to disclose, among other things, that it:

(1)     Intended to create the ability to underfund the Project while simultaneously forcing Abengoa to continue work despite nonpayment;

(2)     Intended to wrongfully draw on the Letter of Credit if Abengoa did not continue work despite nonpayment;

(3)     Intentionally planned to breach the Nevada Prompt Payment Act by using the Agreements as a shield that illegally prevented the Owner from paying for work performed on its Project and eliminated Abengoa's contractual right to stop work and demand payment from Fulcrum;

(4)     Had provided initial Project engineering and information, including P&ID's, technical specifications and cost estimates which were insufficient and inadequate; and

(5)     Needed or intended to make substantial changes to Project design, procurement, and budgeting which would have substantial impacts on the Project cost and schedule.

iii.     <u>Alter ego.</u>  Bioenergy was the alter ego of Biofuels and is thus liable for Biofuels' obligations and liabilities.  Biofuels was influenced and governed by Bioenergy.  Further, there is a unity of interest and ownership such that Biofuels and Bioenergy are inseparable from each other.  For example, at all relevant times, the directors and officers of Biofuels and Bioenergy were largely the same, if not identical. Thus, the same individuals purported to represent and act on behalf of both Bioenergy and Biofuels with respect to the Project.  Under this ruse, the Fulcrum representatives, officers, and directors would later attempt to wrongfully qualify and limit their actions as having been on behalf of only one of the Fulcrum entities, to recast the authority under which they spoke, and claim they were never informed of payment requests under the PERA because they were communicating only on behalf of

7

one Fulcrum entity. Adherence to the corporate and limited liability fiction of Biofuels and Bioenergy as separate entities would sanction the fraudulent actions and conspiratorial behavior explained herein and promote manifest injustice.

This is particularly true because Fulcrum incentivized Abengoa to enter into the PERA by Bioenergy agreeing that it (not its subsidiary Biofuels) is liable for damages Abengoa suffers under the EPC contract for Bioenergy's breach.

iv.   Additional claims sounding in contract, equity, and tort are set forth in detail in the Amended Arbitration Demand.

d.   <u>Abengoa's Mechanics Lien Complaint</u>. As part of its efforts to perfect the Mechanics Liens, Abengoa filed the Mechanics Lien Complaint against debtor Biofuels and asserted cause of action to foreclose on the two mechanic's liens previously recorded and described above. That complaint was stayed by stipulation and Court order until the conclusion of the ICC Arbitration.

## C.   Fulcrum's Counterclaims Against Abengoa

15.   Fulcrum, in turn, alleges that Abengoa lacked the resources and expertise to construct the plant, therefore breaching the Construction Contracts and causing the Project to go over budget. As of the date of Fulcrum's August 2, 2021 counterclaim, Fulcrum alleged that the Project cost Fulcrum $107.3 million in excess of the "Fixed Construction Price" set forth in the parties' various construction contracts. Fulcrum terminated Abengoa on April 23, 2021, hired a new general contractor to attempt to complete the Project (an effort we now know failed), and allegedly incurred tens of millions of dollars in its failed attempt to complete a first-of-a-kind plant intended to convert waste to syncrude and eventually jet fuel.

## OBJECTION

## I.   The APA Seeks to Improperly Strip Abengoa of Its Rights to Assert Recoupment, Setoff, and Other Defenses.

16.   The Debtors are seeking approval of the Sale of the "Acquired Assets", which include litigation claims and causes of action, "free and clear of all liens, Claims, and Encumbrances other than the Permitted Encumbrances" to the Purchaser pursuant to section 363

of the Bankruptcy Code.   APA § 1.1.   While their use of words such as "claims" and "encumbrances" may seem innocuous at first glance, a closer look at those defined terms reveals a troubling attempt to circumvent the law and improperly permit the Purchaser to buy claims free and clear of defenses.

17.   The APA provides that the Purchaser will assume only a limited universe of "Assumed Liabilities" and that the Purchaser will have no successor liability for the "Excluded Liabilities."  *See* APA §§ 1.3 (Assumed Liabilities); 1.4 ("Purchaser shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of, or Action against, Seller or relating to the Acquired Assets, of any kind or nature whatsoever.").   Among the "Liabilities"—broadly defined to include, among other things "any debt, adverse claim, liability (including any liability that results from, relates to or arises out of tort or any other product liability claim), duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution, lien, or premium of any kind or nature whatsoever" (*see*  APA § 11.1(gg))—that the Purchaser seeks not to assume are Abengoa's claims against Fulcrum.   Purchaser also seeks not to assume Abengoa's "Actions" against Fulcrum, which is also broadly defined to include, among other things, "any action, claim (including a counterclaim, cross-claim, or defense), complaint, summons, suit, litigation, arbitration, [or] mediation."  *See* APA § 11.1(a).

18.   Section 1.4 also sets forth a nonexclusive laundry list of specific "Excluded Liabilities" that would encompass Abengoa's asserted claims against Fulcrum., and which include, among many other things:

> (g) all Liabilities in respect of any pending or threatened Action arising out of, relating to, or otherwise in respect of the operation of the Acquired Assets to the extent such Action relates to such operation on or prior to the Closing Date; . . .

(m) all Liabilities under any Contracts (a) that are not validly and effectively assigned to Purchaser pursuant to this Agreement; or (b) to the extent such Liabilities arise out of or relate to a breach by Seller of such Contracts prior to the Closing; and

(n) all Liabilities associated with debt, loans, or credit facilities of Seller.

APA § 1.4.

19.    Most egregiously, the Debtors seek to shed various rights and defenses of counterparties that cannot be extinguished as a matter of law.  Specifically, although the APA provides that "'Claim' has the meaning ascribed by Section 101(5) of the Bankruptcy Code," the APA's defined term goes far beyond what is actually provided in section 101(5) and includes "defenses," "recoupment rights," "offset rights," and "setoff rights."  APA § 11.1(k).  The APA's defined term "Encumbrance" also includes "claims or Liability based on successor liability theories or otherwise under any theory of Law or equity."  APA § 11.1(r).

20.    On the other hand, among the "Acquired Assets" are "all causes of action, lawsuits, judgments, claims, refunds, rights of recovery, rights of set-off, counterclaims, defenses . . . , including all Claims, rights, lawsuits, rights of recovery, objections, causes of action, avoidance actions and similar rights of Seller, . . . along with all rights and interests to the extent necessary or appropriate for Purchaser to effectively prosecute, defend or obtain the benefits of the foregoing" APA § 1.1(f).  This all-encompassing definition captures *all* claims and counterclaims (if any) that any of the Debtors may hold against Abengoa.

21.    By burying overreaching language in its defined terms, the APA purports to surreptitiously strip Abengoa of its defenses, recoupment rights, and setoff rights against claims or counterclaims the Purchaser may elect to pursue against Abengoa (including those that have already been asserted by Fulcrum in prepetition litigation and the ICC Arbitration).  Without the ability to assert recoupment, setoff, or *any* other defense that may be available under applicable law, Abengoa could unfairly be required to pay amounts for which they otherwise have complete

(or even partial) defenses.  At the same time, in a truly egregious effort to improperly tilt the playing field in their direction, the Purchaser is acquiring all rights of recoupment, defense, and setoff that the Debtors may have against Abengoa.  Shielding the Purchaser from Abengoa's rights of recoupment, defense, and setoff while eviscerating those held by Abengoa is fundamentally unfair, violates both bankruptcy and nonbankruptcy law, and simply cannot be permitted.

A.    **Affirmative Defenses, Including Recoupment, Are Not "Claims" or "Interests" That Can Be Extinguished Through a Bankruptcy Sale.**

22.    It is axiomatic that the Debtors are not, as a matter of law, permitted to strip off recoupment or other defenses as they are covertly attempting to do here.  It is beyond dispute that a creditor's right to assert affirmative defenses, including recoupment (*i.e.*, offset of mutual debts arising from the same transaction), is preserved in bankruptcy and cannot be discharged or extinguished pursuant to a plan or a section 363 sale; courts have universally held that defenses are neither "claims" nor "interests."  *See Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993) ("It is well settled, moreover, that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment."); *see also Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 260 (3d Cir. 2000) (holding that a right of recoupment is a defense and not an interest in property and therefore is not extinguished by a section 363(f) sale); *Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1037 (3d Cir. 1995) (concluding that confirmation of plan does not affect the right of recoupment); *In re Ditech Holding Corp.*, 606 B.R. 544, 595–601 (Bankr. S.D.N.Y. 2019) (holding that recoupment rights cannot be extinguished in bankruptcy through either a plan or disclosure statement because they are neither "claims," nor "debts," nor "interests"); *Hispanic Indep. Television Sales, LLC v. Kaza Azteca Am. Inc.*, No. 10 Civ. 932, 20912 WL 1079959, at *5 (S.D.N.Y. Mar. 30, 2012) ("[S]ales pursuant to section 363(f) do not extinguish affirmative defenses.  As recoupment is a defense, it is not

extinguished by a section 363(f) sale.") (citing *Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02-civ-9629, 2003 U.S. Dist. LEXIS 9802, at *17 (S.D.N.Y. June 9, 2003) ("[R]ecoupment is not a 'claim' within the meaning of the Bankruptcy Code . . .") (alteration in original)); *In re Lawrence United Corp.*, 221 B.R. 661, 669 (Bankr. N.D.N.Y. 1998) (holding that an insurance company's alleged right of recoupment was not an interest in property within the meaning of section 363(f) and was therefore not affected by bankruptcy court's order selling assets free and clear of liens and interests).

23.    Accordingly, any provision of the APA or Sale Order that purports to discharge, eliminate, restrict, or in any way adversely impact any claimant's rights to assert recoupment or another affirmative defense is improper and unenforceable as a matter of law and should be stricken in its entirety.  In fact, the APA and the Sale Order should expressly *preserve* these rights to prevent any ambiguity.

**B.    Abengoa's Timely Assertion of Setoff Rights Pursuant to Section 553(a) Precludes Sale of the Acquired Assets Free and Clear of Such Rights.**

24.    Additionally, section 553(a) of the Bankruptcy Code expressly preserves a creditor's state-law setoff rights:[5]

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a).

---

[5]    Recoupment and setoff rights are governed, in the first instance, by nonbankruptcy law, ordinarily state law. *See Travelers Casualty & Surety Co. of Am. v. Pacific Gas and Elec. Co.*, 127 S. Ct. 1199, 1205 (2007).  Bankruptcy courts must consult and apply state law in determining the validity of claims subject to recoupment. *Id.* at 1204–05 (referring to the "settled principle that [c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtors' obligation, subject to any qualifying or contrary provision of the Bankruptcy Code").

25.     The contracts giving rise to Fulcrum and Abengoa's claims against each other are governed by Nevada state law.  Nevada law recognizes the equitable right to setoff provided that each party has a valid and enforceable debt against the other party.[6]  *See, e.g.*, *Aviation Ventures, Inc. D/B/A Vision Air v. Joan Morris, Inc. D/B/A Las Vegas Tourist Bureau*, 121 Nev. 113, 120 (2005).  "[T]he claims that give rise to a setoff need not arise out of the same transaction; they may be entirely unrelated." *Id.*  The parties each believe they have valid and enforceable claims against each of the opposing parties; however, the validity and enforceability of these claims has not yet been determined.

26.     Under section 553, "[t]o maintain a right of setoff, the creditor must prove the following:  1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case; 2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case. [and] 3. The debt and the claim are mutual obligations." *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (quoting *In re Nickerson & Nickerson, Inc.*, 62 B.R. 83, 85 (Bankr. D. Neb. 1986)).  "The debts and claims do not have to be of the same character before setoff may be applied*." In re Braniff Airways, Inc.*, 42 B.R. 443, 447 (Bankr. N.D. Tex. 1984).  Not only are setoff rights reserved under section 553, but pursuant to section 506(a), " a setoff right gives rise to an allowed secured claim to the extent of the amount subject to setoff."  11 U.S.C. § 506(a).

---

[6]    In Nevada, recoupment is an affirmative defense and must arise out of the same transaction and involve the same parties.  *See* N.R.S. 104.3305(1)(c) (providing that the right to enforce the obligation of a party is subject to "[a] claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument . . ."); *Schettler v. RalRon Capital Corp.*, 128 Nev. 209, 222 (2012) (holding that recoupment is not an affirmative defense barred by FIRREA); *see also Nevada State Bank v. Jamison Family Partnership*, 106 Nev. 792, 798–99 (1990) (holding that recoupment is an affirmative defense that may be asserted even though the defendant's claim is barred by the applicable statute of limitations).

27.     As described above, the claims asserted by Fulcrum and Abengoa against each other[7] relate solely to prepetition events and are the subject of the prepetition litigation and arbitration described above and in the attached documentation.   Therefore, the first two requirements of section 553 are satisfied here.

28.     The mutuality requirement is also satisfied here.  To establish mutuality, "each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally."  *Braniff*, 814 F.2d at 1036 (internal quotation marks and citations omitted).  Both Abengoa entities and both Fulcrum entities have asserted the same claims against both counterparty entities surrounding the Project and property that form the primary assets of the sale.  Indeed, Fulcrum's own counterclaim, alleges:

> As previously discussed, it is the Respondents [i.e. debtors Biofuels and Bioenergy] that were damaged and that are entitled to reimbursement of many millions of dollars as set forth in their Counterclaim below. To the extent the Tribunal determines that Claimants [i.e. AATGP and Parent] are entitled to any reimbursement for amounts claimed in various CVOs or otherwise, those amounts will be vastly eclipsed by the damages Abeinsa and Abengoa themselves caused. As such, any amounts due to the Claimants must be **offset** against amounts due from the Claimants to the Respondents, including liquidated damages and **setoffs** against funds already paid in excess of the earned Fixed Construction Price, and additional costs to complete the Project.

Counterclaim ¶ 242 (emphasis added).[8]

29.     As the Third Circuit has recognized, a creditor's right of setoff is preserved in bankruptcy under section 553 so long as it is exercised in a timely fashion and in accordance with other provisions of the Bankruptcy Code.  *See In re Continental Airlines*, 134 F.3d 536, 541 (3d Cir. 1998) (holding that where creditor asserted its setoff rights only after the plan was confirmed, creditor is precluded from exercising setoff right); *accord Carolco Televisions, Inc. v. Nat'l*

---

[7]    To be clear, each of AATGP and Parent hold claims subject to potential rights of setoff against both Biofuel and Bioenergy.  Biofuel and Bionergy have each asserted counterclaims against each of AATGP and Parent.

[8]    Fulcrum's Arbitration counterclaim is also subject to confidentiality restrictions.  Abengoa will file a copy of the Arbitration Demand on the docket under seal upon request by the Court.

*Broadcasting (In re De Laurentiis Ent. Group, Inc.)*, 963 F.2d 1269, 1276–77 (9th Cir.) (holding that preservation of right of setoff under section 553 takes precedence over confirmation of plan under section 1141), *cert. denied*, 506 U.S. 918 (1992). *Continental Airlines* addressed preservation of setoff rights in the confirmation context and held that for setoff rights to survive confirmation, all a creditor must do is assert such right and object to the plan. *See Continental Airlines*, 134 F.3d at 541. The same reasoning applies here: Abengoa is timely asserting its setoff rights by objecting to the extinguishment of those rights as pursuant to the APA.

30.     Moreover, because "[s]etoff occupie[s] a favored position in our history of jurisprudence," *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164 (2d Cir. 1979), courts do not interfere with its exercise absent "the most compelling circumstances," *Niagara Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.)*, 41 B.R. 941, 944 (N.D.N.Y. 1984); *see also N.J. Nat'l Bank v. Gutterman (In re Applied Logic Corp.)*, 576 F.2d 952 (2d Cir. 1978) ("The rule allowing setoff ... is not one that courts are free to ignore when they think application would be unjust."). Compelling circumstances generally entail criminal conduct or fraud by the creditor. *In re Whimsy, Inc.*, 221 B.R. 69 (S.D.N.Y. 1998). No such compelling circumstances are present here. Indeed, no explanation for why setoff should not apply is provided by the Debtors. Instead, as best Abengoa can tell, the APA was *intended* to strip away these rights.

31.     Accordingly, the APA and the Sale Order should make it crystal clear that, in addition to preserving all setoff rights under applicable law, creditors (particularly those such as Abengoa who have expressly preserved such rights in an objection to the Sale) should be permitted to assert their rights *defensively*, as many courts have permitted creditors to do. *See, e.g.*, *Bernstein v. IDT Corp.*, 76 B.R. 275, 281 (S.D.N.Y. 1987) ("Counterclaims and set-offs may be asserted in a plenary suit notwithstanding the fact that no proof of claim had been filed in Bankruptcy Court. A creditor may be content not to file such a claim so long as no affirmative relief is sought from it

15

by the bankrupt, but once the Trustee asserts a claim against the creditor, equity requires that the creditor be permitted to assert authorized counterclaims.").

32.     Unless and until these very serious defects are fixed, the APA, as currently drafted, should not be approved.  The APA is simply and flatly incompatible with applicable law demanding that defense rights, including setoff (where such right is being timely asserted and preserved as it is here) and recoupment, cannot be discharged or stripped off through the bankruptcy process.

## II. Abengoa Is Entitled to Adequate Protection of Its Setoff Rights Pursuant to Section 363(e) of the Bankruptcy Code.

33.     Section 363(e) provides, in relevant part, that "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

34.     Pursuant to section 506(a), should it be determined that Abengoa holds valid claims against Fulcrum and Fulcrum holds valid claims against Abengoa, Abengoa holds an allowed secured claim against Fulcrum to the extent it is determined to hold valid setoff rights.  As such, Abengoa is entitled to adequate protection of its setoff rights in accordance with section 361 of the Bankruptcy Code.  11 U.S.C. § 361.  The only appropriate and meaningful way to adequately protect Abengoa is for their (as-yet unliquidated) setoff rights to travel with the Acquired Assets. Knowing that the Purchaser wants to take the Acquired Assets free and clear and because Abengoa holds a setoff right and not a lien,[9] the Debtors are required to provide Abengoa relief that "will

---

[9]     *See, e.g.*, *Folger-Adam*, 209 F.3d at 259–60 (noting that the terms "setoff" and "lien" "connote independent concepts, governed by distinct legal principles" and that "[a] lien is distinct from the obligation it secures while the same is not true of a right of setoff or recoupment") (quoting *Marley v. United States*, 381 F.2d 738, 743 (Ct. Cl. 1967) (internal quotation marks omitted).

result in the realization by [Abengoa] of the indubitable equivalent of [Abengoa's] interest" in the Acquired Assets.  *See* 11 U.S.C. § 361(3).  The only practical way to effectuate this adequate protection is to ensure that the APA and Sale Order are modified to include language providing that, as adequate protection, Abengoa's setoff rights will survive the Sale.

### III.    The Automatic Stay Should Be Lifted to the Extent Necessary for Abengoa to Assert and Liquidate Its Setoff Rights.

35.    Finally, Abengoa requests that the Court prospectively lift the automatic stay under section 362 of the Bankruptcy Code (to the extent it applies) to allow Abengoa to exercise its setoff rights to the extent Fulcrum and/or the Purchaser pursue claims asserted by Fulcrum against Abengoa.  To avoid unnecessary and duplicative litigation, Abengoa should also be permitted to fix its setoff and recoupment rights to the extent it is determined these rights apply in the ICC Arbitration, and the ICC Arbitration should liquidate any remaining unsecured claim that Abengoa may have in the Chapter 11 Cases.

### RESERVATION OF RIGHTS

36.    Abengoa expressly reserves all of its rights in all respects, including, without limitation, its rights to supplement this Objection, to object to any modified or alternative transaction proposed by the Debtors, the Purchaser, or any other party in these Chapter 11 Cases, to object to any proposed Sale Order,[10] and to move for additional and further relief.

---

[10]    The Debtors filed a proposed Sale Order yesterday at the close of business and counsel for Abengoa is reviewing now.  On Abengoa's initial review, the proposed sale order seems to contain all of the same deficiencies that exist in the APA, along with potentially new problems, including creating a new and purported obligation of creditors to take setoff rights prior to the sale (which is found nowhere in the APA), and which, in the context of this case is not only inappropriate but also utterly impossible given that the opposing and complex claims of Abengoa and Fulcrum are each disputed and unliquidated.  Abengoa reserves all rights to object to this or any other Sale Order through the hearing on the Sale Motion.

## **CONCLUSION**

37.    For the foregoing reasons, Abengoa respectfully requests that the Court enter an order, (i) denying the Sale Motion or, in the alternative, modifying the APA and any Sale Order to cure the defects described herein and expressly preserve Abengoa's recoupment, defense, and setoff rights and entitlement to adequate protection; (ii) lifting the automatic stay to the extent necessary for Abengoa to assert and liquidate any claims that it holds against Fulcrum and to assert any available defenses, including any setoff and recoupment rights; and; (iii) granting such further and additional relief as the Court deems proper and just.


Dated: October 25, 2024

*/s/ Henry Jaffe*
Henry Jaffe (No. 2987)
824 North Market Street, Suite 800
Wilmington, DE 07601
Tel: (302)592-6496
Email: hjaffe@pashmanstein.com

- and -

Alex L. Fugazzi  (admitted *pro hac vice*)
**SNELL & WILMER L.L.P.**
1700 S. Pavilion Center Drive,
Las Vegas, NV 89135
Telephone: (702) 785-5202
Email:  afugazzi@swlaw.com

*Counsel to Abeinsa Abener Teyma General Partnership and Abengoa, S.A.*